# EXHIBIT 1

## BIDDING PROCEDURES

Mad Catz, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") on March 30, 2017, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

By Motion dated May 19, 2017 (the "Sale Motion"), David W. Carickhoff (the "Trustee"), as the chapter 7 trustee of the bankruptcy estate (the "Estate") of the Debtor sought approval of, among other things, the procedures through which he will determine the highest or otherwise best offer(s) to sell the assets of the Debtor either in bulk or in lots (collectively, the "Purchased Assets") to the party or parties that submit, in the Trustee's business judgment, the highest or otherwise best offers for the Purchased Assets (a "Sale Transaction").

The Purchased Assets consist of office furniture, office computer equipment, inventory and intellectual property and will be broken down into lots as follows:

| Hard Assets | Intellectual Property |
|---|---|
| • Refurbished inventory;<br>• Demos;<br>• Headsets;<br>• Mice;<br>• Keyboards;<br>• Fightsticks;<br>• Office furniture; and<br>• Office computer equipment | • Debtor owned patents, copyrights and trademarks; and<br>• Debtor owned domain names, social media, and other intellectual property rights. |

Additionally, the Trustee will attempt to coordinate the sale of Non-Debtor Affiliate owned patents, copyrights, trademarks and other intellectual property with bidders and the relevant liquidators of the Non-Debtor Affiliates.

**Bidders may bid on one or more lots.  If a bidder bids on multiple lots, the bidder must allocate the proposed purchase price per lot.**

On June __, 2017, the Bankruptcy Court entered an order (the "Bidding Procedures Order") which, among other things, authorized the Trustee to determine the highest or otherwise best offer(s) for the Purchased Assets through the process and procedures set forth below (these "Bidding Procedures").

### Access to Diligence Materials

To the extent parties request any additional due diligence that the Trustee determines to be of sensitive nature ("Diligence Materials"), a party must submit to the Trustee an executed confidentiality agreement in a form acceptable to the Trustee in his sole discretion.  Parties interested in receiving any Diligence Materials should contact counsel to the Trustee, Archer & Greiner, P.C., 300 Delaware Avenue, Suite 1100, Wilmington, DE 19801, Attn: Alan Root

(aroot@archerlaw.com) and identify the additional Diligence Materials sought.

The Trustee will afford any interested bidder the time and opportunity to conduct reasonable due diligence under the time constraints and circumstances; provided, however, that the Trustee shall not be obligated to furnish any due diligence information after the Bid Deadline. The Trustee reserves the right to withhold any Diligence Materials that the Trustee, in consultation with his advisors, determines are business-sensitive or otherwise not appropriate for disclosure to an interested bidder. Neither the Trustee nor his representatives shall be obligated to furnish information of any kind whatsoever to any person. Bidders shall conduct their own due diligence and shall not have any claims or causes of action against the Trustee or his professionals or agents for the accuracy of any information provided to them by the Trustee or his professionals or agents.

Each interested bidder and Qualified Bidder (as defined below) shall comply with all reasonable requests for additional information and due diligence access by the Trustee or his advisors regarding such interested bidder or Qualified Bidder, as applicable, and its contemplated transaction for the Purchased Assets. Failure by an interested bidder or Qualified Bidders to comply with requests for additional information and due diligence access may be a basis for the Trustee to determine that any Bid (as defined below) submitted by such interested bidder or Qualified Bidder is not a Qualified Bid (as defined below). Bidders (as defined below) must complete all due diligence by no later than the Bid Deadline (as defined below).

## Assets to Be Sold Free and Clear

Except as otherwise provided in an asset purchase agreement submitted by a Successful Bidder (as defined below) (including any exhibits or schedules thereto), the Trustee will seek to sell all of the Debtor's right, title and interest in and to the Purchased Assets subject thereto free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Liens") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens to attach to the net proceeds of the sale of the Purchased Assets with the same validity and priority as such Liens applied against the Purchased Assets.

## Bidding Process

The Trustee and his advisors shall (i) determine whether any person is a Qualified Bidder (as defined below), (ii) coordinate the efforts of interested bidders in conducting their due diligence investigations, (iii) receive offers from Bidders (as defined below), and (iv) negotiate any offers made to purchase the Purchased Assets.

***Key Dates For Potential Competing Bidders***

| | |
|---|---|
| **Bid Deadline:** | **June 12, 2017 at 5:00 p.m. (ET)** |
| **Auction[1]:** | **June 19, 2017 at 10:00 a.m. (ET)** |
| **Sale Hearing:** | **June 21, 2017 at 10:00 a.m. (ET)** |
| **Return of Deposits:** | **June 28, 2017 (other than for any Successful Bidders and Backup Bidders)** |

***Bid Submission Process***

To be eligible to be considered by the Trustee in the bid submission process, each offer, solicitation or proposal (each, a Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by the Trustee, in consultation with his advisors, to satisfy each of the following conditions:

(a)     Good Faith Deposit:  A Bid must be accompanied by a deposit in the amount of ten percent (10%) of the purchase price contained in the Asset Purchase Agreement (as defined below), to an escrow account to be identified and established by the Trustee (the "Good Faith Deposit").   Each submitted Asset Purchase Agreement (as defined below) must provide a representation that the Good Faith Deposit shall be subject to all of the terms of these Bidding Procedures.

(b)     Executed Agreement:   A Bid must be based on the form of asset purchase agreement attached hereto as Exhibit A-1 or A-2, as applicable (the "Form APA")[2] and must include binding, executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a Sale Transaction (an "Asset Purchase Agreement").  A Bid also must include a copy of a redline reflecting all of the changes to the Form APA requested by the Bidder.  Any Asset Purchase Agreement must provide that (i) the Bidder agrees to remove all Acquired Assets and associated documents and records pertaining to such Acquired Assets from their locations within ten days of Closing or not later than June 30, 2017 and (ii) in the event any of the Acquired Assets remain at any location beyond June 30, 2017, Bidder shall be responsible for the associated rent or storage charges until the items are removed.

---

[1] An auction will only be held if there is more than one Qualified Bid (as defined below) for all or a portion of the Purchased Assets.

[2] Bidders interested in purchasing substantially all or large lots of the Debtor's assets should use the long form of APA attached hereto as Exhibit A-1.  Bidders interested in purchasing small lots of the Debtor's assets should use the short form of APA attached hereto as Exhibit A-2.

(c)     <u>Designation of Purchased Assets</u>:  A Bid must identify with particularity any and all of the Purchased Assets that the Bidder proposes to purchase, must allocate the purchase price per lot of Purchased Assets identified, and must indicate whether a bid for a lot of Purchased Assets is contingent on such Bidder acquiring a different lot of Purchased Assets (*i.e.*, Bid is for headset inventory and Tritton IP, must obtain both).

(d)     <u>Designation of Contracts and Leases</u>:  A Bid must identify with particularity each and every contract and lease with respect to which the Bidder seeks assignment from the Trustee.

(e)     <u>Designation of Assumed Liabilities</u>:  A Bid must identify with particularity any and all liabilities that the Bidder proposes to assume, including, but not limited to, any cure costs associated with the assumption and assignment of the Assigned Contracts, pursuant to section 365 of the Bankruptcy Code.

(f)     <u>Corporate Authority</u>:  A Bid must include written evidence reasonably acceptable to the Trustee demonstrating appropriate corporate authorization to consummate the proposed Sale Transaction; <u>provided</u> <u>that</u>, if the Bidder is an entity specially formed for the purpose of effectuating the Sale Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Trustee of the approval of the Sale Transaction by the equity holder(s) of such Bidder.

(g)     <u>Disclosure of Identity of Bidder</u>:  A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Purchased Assets, including any equity holders, in the case of a Bidder which is an entity specially formed for the purpose of effectuating the Sale Transaction, or otherwise participating in connection with such Bid, and the complete terms of any such participation, including any agreements, arrangements or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid. A Bid must also fully disclose any connections or agreements with the Debtor, or any other known, potential or prospective Bidder or Qualified Bidder, and/or any officer, director or equity holder of the Debtor.

(h)     <u>Proof of Financial Ability to Perform</u>:  A Bid must include written evidence that demonstrates, as determined by the Trustee in consultation with his advisors, that the Bidder has the necessary financial ability to close the Sale Transaction and provide adequate assurance of future performance under all contracts and leases to be assumed and assigned in the Sale Transaction.

(i)     <u>Regulatory and Third Party Approvals</u>:  A Bid must set forth each regulatory and third-party approval, if any, required for the Bidder to consummate the Sale Transaction and the time period within which the Bidder expects to receive such regulatory and third party approvals.  Additionally, a Bid must include evidence that the Trustee concludes, in consultation with his advisors, demonstrates that the Bidder likely has the ability to obtain all regulatory and third party approvals necessary to consummate the Sale Transaction.

(j)     <u>Contact Information and Affiliates</u>:  The Bid must provide the identity and contact information for the Bidder and full disclosure of any affiliates of the Bidder.

(k)     <u>No Contingencies</u>:  A Bid may not be conditioned on obtaining financing, any internal approvals or credit committee approvals, or on the outcome or review of unperformed due diligence.  Additionally, it cannot be contingent on acquiring other assets from Non-Debtor Affiliates.

(l)     <u>Irrevocable</u>:  A Bid must be irrevocable until five (5) business days after the Sale Hearing, <u>provided that</u> if such Bid is accepted as a Successful Bid or Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures.

(m)     <u>Compliance with Diligence Requests</u>:  A Bidder submitting a Bid must have complied with reasonable requests for additional information and due diligence access from the Trustee to the satisfaction of the Trustee.

(n)     <u>Confidentiality Agreement</u>:  To the extent needed and not already executed, the Bid must include an executed confidentiality agreement in the form reasonably acceptable to the Trustee in his sole discretion.

(o)     <u>No Bid Protections</u>:  The Bid must not entitle the Bidder to any bid protections including, without limitation, any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement and, by submitting the Bid, the Bidder further waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in the Auction.

(p)     <u>Submission of Bids</u>:  The following parties must receive a Bid in writing (in both PDF and Word format), on or before the Bid Deadline: (1) the Trustee, c/o Archer & Greiner, P.C., 300 Delaware Avenue, Suite 1100, Wilmington, DE 19801, Attn: David W. Carickhoff (dcarickhoff@archerlaw.com); (2) financial advisor to the Trustee, Giuliano, Miller & Company, LLC, 140 Bradford Drive, West Berlin, NJ 08091, Attn: Robert Edwards (REdwards@giulianomiller.com); and (3) general bankruptcy counsel to the Trustee, Archer & Greiner, P.C., 300 Delaware Avenue, Suite 1100, Wilmington, DE 19801, Attn: Alan Root (aroot@archerlaw.com).

(q)     **<u>Bid Deadline</u>:  Bids must be submitted on or before June 12, 2017 at 5:00 p.m. (ET)**

A Bid received from a Bidder on or before the Bid Deadline that meets the requirements of paragraphs a-q above, as determined by the Trustee after consultation with his advisors shall constitute a "<u>Qualified Bid</u>," and such Bidder shall constitute a "<u>Qualified Bidder</u>"; <u>provided</u> that if the Trustee receives a Bid prior to the Bid Deadline that is not a Qualified Bid the Trustee may provide the Bidder with the opportunity to remedy any deficiencies prior to the Bid Deadline (or, if applicable, before the Auction); <u>provided</u>, <u>further</u>, that, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Trustee to

the satisfaction of the Trustee, the Trustee may, after consulting with his advisors, disqualify any Qualified Bidder and Qualified Bid, in the Trustee's discretion, and such Qualified Bidder shall not be entitled to attend or participate in the Auction. Upon determination that a Bid constitutes a Qualified Bid, the Trustee shall, within one (1) day of such determination, provide any Qualified Bidder with a copy of such Qualified Bid. For the avoidance of doubt, the Trustee shall use his best efforts to notify promptly any Bidder whether its Bid is considered a Qualified Bid.

Each Qualified Bidder, by submitting a Bid, shall be deemed to acknowledge and agree that it is not relying upon any written or oral statements, representations, promises, warranties or guarantees of any kind whether expressed or implied, by operation of law or otherwise, made by any person or party, including the Trustee and his agents and representatives (other than as may be set forth in a definitive agreement executed by the Trustee), regarding the Debtor, the Assets, these Bidding Procedures or any information provided in connection therewith.

### The Auction

If more than one Qualified Bid for all or a portion of the Purchased Assets is received by the Bid Deadline, the Trustee will hold an auction to determine the highest or otherwise best Qualified Bid (the "Auction") on **June 19, 2017 at 10:00 a.m. (ET)** at the offices of Archer & Greiner, P.C., 300 Delaware Avenue, Suite 1100, Wilmington, DE 19801, and/or by teleconference. Only the Trustee, the Office of the United States Trustee, the First Lien Agent, and any Qualified Bidder, and their respective representatives and counsel may participate in the Auction. Creditors of the Debtor may attend and observe, but not participate in (other than the First Lien Agent and any creditor that is a Qualified Bidder) the Auction, provided that they provide the Trustee with written notice of their intention attend the Auction on or before the Bid Deadline. All Qualified Bidders at the Auction shall be deemed to have (a) consented to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Trustee, the Estate, the Bidding Procedures, any Asset Purchase Agreement submitted by a Qualified Bidder, the Purchased Assets, the Auction, or the construction of any Qualified Bid or related documents and (b) waived any right to a jury trial in connection with any disputes relating to the Trustee, the Estate, the Bidding Procedures, any Asset Purchase Agreement submitted by a Qualified Bidder, the Purchased Assets, the Auction, or the construction of any Qualified Bid or related documents.

Each Qualified Bidder participating at the Auction must confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

The Trustee, after consultation with his advisors will select the Qualified Bid(s) that he determines to be the highest and/or best Qualified Bid(s) (the "Baseline Bid") to serve as the starting point at the Auction. Selection of the Baseline Bid(s) shall take into account all relevant considerations, including which Purchased Assets are included in the Bid, the financial condition of the applicable Qualified Bidder, the assumption of any liabilities by the Qualified Bidder under the applicable Asset Purchase Agreement, and the certainty of closing. For the avoidance of doubt, there may be more than one baseline bid depending on whether bidders are bidding on only specific lots of Purchased Assets.

At the Auction, participants will be permitted to increase their Bids and improve their

terms. Bidding for the Purchased Assets will start at the purchase price and terms proposed in the Baseline Bid(s). The Trustee will announce the lots of Purchased Assets being bid on and the bidding increments at the outset of the Auction.

The Trustee, after consultation with his advisors may at any time adopt rules for the Auction that the Trustee reasonably determines to be appropriate to promote the goals of the sale process, provided that such rules are not in conflict with these Bidding Procedures or the Bid Procedures Order and are disclosed to each Qualified Bidder participating in the Auction.

## Selection of Successful Bid(s) and Backup Bid(s)

At the conclusion of the Auction, the Trustee, after consultation with his advisors, will determine the highest or otherwise best Qualified Bid(s) for all or certain lots of the Purchased Assets (the "Successful Bid(s)" and, the Bidder(s) submitting such Successful Bid(s), the "Successful Bidder(s)") and the next highest or next best Qualified Bid(s) (the "Backup Bidder(s)"). This determination shall take into account any factors the Trustee reasonably deems relevant to the value of the Qualified Bid(s) to the Estate and may include, but are not limited to, the following: (a) the amount of the consideration and the resulting recovery to creditors; (b) the total consideration to be received by the Estate, including the assumption of any liabilities of the Estate; (c) the Bidder's ability to close a transaction and the timing thereof; and (d) the net benefit to the Estate (collectively, the "Bid Assessment Criteria"). The Trustee shall not consider any Bids submitted after the conclusion of the Auction. For the avoidance of doubt, there may be more than one Successful Bid and Backup Bid depending on whether bidders are bid on only specific lots of Purchased Assets.

The Backup Bidder(s) shall be required to keep any such Bid (the "Backup Bid") open and irrevocable until the earlier of: (i) the closing of the transaction with the Successful Bidder(s); or (ii) 30 days after the Sale Hearing.

Within 24 hours of the close of the Auction, the Trustee shall file with the Bankruptcy Court a notice of the Successful Bid(s) and Successful Bidder(s).

Following the Sale Hearing, if a Successful Bidder fails to consummate a purchase of the Purchased Assets, the Trustee may deem the applicable Backup Bidder to have the new prevailing bid, and the Trustee will be authorized, without further order of the Bankruptcy Court, to consummate the transaction with the Backup Bidder. In such case of a failure to consummate the purchase of the Purchased Assets on the part of such Successful Bidder (including any Backup Bidder designated as a Successful Bidder), the defaulting Successful Bidder's Good Faith Deposit shall be forfeited to the Trustee for the benefit of the Estate. In addition, the Trustee, on behalf of the Estate, specifically reserves the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

## Sale Is As Is/Where Is

Except as otherwise set forth in the Asset Purchase Agreement of any Successful Bidder or an order of the Bankruptcy Court approving a Sale Transaction, the sale of the Purchased

Assets pursuant to the Bidding Procedures shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Trustee, his agents or the Estate.  By submitting a Bid, each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in these Bidding Procedures or as set forth in the Asset Purchase Agreement of a Successful Bidder or the Sale Order.

### Sale Hearing

The Successful Bid(s) and the Backup Bid(s) will be subject to approval by the Bankruptcy Court.  A hearing to approve any Successful Bid(s) and any Backup Bid(s) (the "Sale Hearing") shall take place on **June 21, 2017 at 10:00 a.m. (ET)**.  The Sale Hearing may be adjourned by the Trustee from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a notice on the docket of Debtor's Bankruptcy Case.

### Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more escrow accounts by the Trustee.  The Good Faith Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after the Sale Hearing.  The Good Faith Deposit of any Backup Bidder shall be returned to such Backup Bidder the earlier of:  (i) five (5) business days after the closing of the transaction with the Successful Bidder; or (ii) 45 days after the Sale Hearing.  If a Successful Bidder timely closes the Sale Transaction, its Good Faith Deposit shall be credited towards the purchase price, in accordance with the Successful Bidder's Asset Purchase Agreement.

### Reservation of Rights of the Trustee

Except as otherwise provided in the Bidding Procedures or the Bidding Procedures Order, the Trustee reserves the right as he may reasonably determine to be in the best interest of the Estate, to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid(s) constitute the highest or best proposal(s) and which constitute the next highest or best proposal(s); (d) reject any Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (3) contrary to the best interests of the Debtor and its Estate; (e) waive non-compliance with any of the terms and conditions set forth herein as he determines to be in the best interests of the Estate, its creditors, and other parties in interest; (f) impose additional terms and conditions with respect to all potential bidders; (g) extend the deadlines set forth herein; (h) continue or cancel the Sale Hearing in open court, or by filing a notice on the docket of the Debtor's Bankruptcy Case, without further notice to creditors or other

parties in interest; and (i)  implement additional procedural rules that the Trustee determines, in his business judgment, will better promote the goals of the bidding process and discharge the Trustee's fiduciary duties; provided, however, that any modification or additions to the Bidding Procedures shall not be materially inconsistent with the Bidding Procedures Order or any other order of the Court, the Bankruptcy Code, or the Bankruptcy Rules, and shall be disclosed to each Qualified Bidder.

116050073v3

# EXHIBIT A-1

ASSET PURCHASE AGREEMENT

by and between

David W. Carickhoff, solely as chapter 7 trustee of the
BANKRUPTCY ESTATE OF MAD CATZ, INC.

and

[NAME], as Buyer

Dated as of _____ __, 2017

**TABLE OF CONTENTS**

**Page**

ARTICLE 1. PURCHASE AND SALE OF THE ACQUIRED ASSETS ............................ 1

    Section 1.1.    Transfer of Acquired Assets ................................................................ 1

    Section 1.2.    Excluded Assets ................................................................................... 2

    Section 1.3.    Assumed and Assigned Contracts ........................................................ 3

    Section 1.4.    Assumption of Liabilities .................................................................... 3

ARTICLE 2. CONSIDERATION ..................................................................................... 3

    Section 2.1.    Consideration ....................................................................................... 3

    Section 2.2.    Deposit ................................................................................................. 3

    Section 2.3    363 Sale ............................................................................................... 3

ARTICLE 3. CLOSING AND DELIVERIES .................................................................. 4

    Section 3.1.    Closing ................................................................................................. 4

    Section 3.2.    Seller's Deliveries ............................................................................... 4

    Section 3.3.    Buyer's Deliveries .............................................................................. 4

ARTICLE 4. REPRESENTATIONS AND WARRANTIES ............................................ 4

    Section 4.1.    Representations and Warranties of Seller ........................................... 4

    Section 4.2.    Representations and Warranties of Buyer ........................................... 5

    Section 4.3.    Warranties Exclusive .......................................................................... 6

    Section 4.4.    Survival of Representations and Warranties ....................................... 6

ARTICLE 5. COVENANTS AND OTHER AGREEMENTS ......................................... 6

    Section 5.1.    Covenants of Seller ............................................................................. 6

    Section 5.2    Covenants of Buyer ............................................................................. 6

    Section 5.3.    Bankruptcy Matters ............................................................................. 6

ARTICLE 6. TAXES ......................................................................................................... 6

    Section 6.1.    Taxes Related to Purchase of Assets ................................................... 6

    Section 6.2.    Cooperation on Tax Matters ................................................................ 7

ARTICLE 7. CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES ........... 7

    Section 7.1.    Conditions Precedent to Performance by Seller ................................. 7

    Section 7.2.    Conditions Precedent to the Performance by Buyer ........................... 8

ARTICLE 8. TERMINATION .......................................................................................... 9

    Section 8.1.    Termination .......................................................................................... 9

**TABLE OF CONTENTS**
(continued)

Page

ARTICLE 9.    MISCELLANEOUS ........................................................................ 10

    Section 9.1.    Successors and Assigns.................................................. 10

    Section 9.2.    Governing Law; Jurisdiction.......................................... 10

    Section 9.3.    Expenses ........................................................................ 10

    Section 9.4.    Broker's and Finder's Fees ............................................ 10

    Section 9.5.    Severability .................................................................... 11

    Section 9.6.    Notices ........................................................................... 11

    Section 9.7.    Amendments; Waivers.................................................... 12

    Section 9.8.    Public Announcements ................................................... 12

    Section 9.9.    Entire Agreement ........................................................... 12

    Section 9.10.    Parties in Interest........................................................... 12

    Section 9.11.    Headings, Interpretation, Gender ................................... 13

    Section 9.12.    Counterparts ................................................................... 13

ARTICLE 10.    DEFINITIONS ............................................................................... 13

    Section 10.1.    Certain Terms Defined.................................................... 13

SCHEDULES

Schedule 1.1(a)    -          Acquired Assets

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of _____, 2017 (the "Effective Date"), is made by and between DAVID W. CARICKHOFF, solely as chapter 7 trustee of estate of Mad Catz, Inc.., Debtor under Case No. 17-10679 (KG) (the "Seller" or "Trustee"), and [NAME], a [STATE] [form of entity] ("Buyer"). Capitalized terms used in this Agreement are defined or cross-referenced in Article 10.

### *BACKGROUND INFORMATION*

A.    Mad Catz, Inc. (the "Debtor") commenced a voluntary bankruptcy case under chapter 7 of title of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on March 30, 2017 (the "Petition Date"). Thereafter, the Trustee was appointed as the chapter 7 trustee of the Debtor.

B.    Prior to the Petition Date, the Debtor was a global provider of interactive entertainment products, primarily in the gaming industry. The Debtor's products were catered to gamers across multiple platforms including in-home gaming consoles, handheld gaming consoles, computers, smart phones, tablets and other smart devices (collectively, the "Business").

C.    Buyer desires to purchase the Acquired Assets (as defined below) from Seller, and Seller desires to sell, convey, assign and transfer to Buyer, the Acquired Assets, all in the manner and subject to the terms and conditions set forth in this Agreement and in accordance with §§ 105 and 363 and other applicable provisions of the Bankruptcy Code.

D.    The Acquired Assets are assets of the Debtor's bankruptcy estate ("Estate"), which are to be purchased and assumed by Buyer pursuant to an order of the Bankruptcy Court approving such sale pursuant to §§ 105, 363 and 365 of the Bankruptcy Code in a form reasonably acceptable to Buyer and Seller (the "Sale Order"), all in the manner and subject to the terms and conditions set forth in this Agreement, the Sale Order, and in accordance with other applicable provisions of the Bankruptcy Code.

E.    The execution and delivery of this Agreement and Seller's ability to consummate the transactions set forth in this Agreement are subject, among other things, to the entry of the Sale Order.

NOW, THEREFORE, in consideration of the foregoing and their respective representations, warranties, covenants and agreements herein contained, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

ARTICLE 1.    PURCHASE AND SALE OF THE ACQUIRED ASSETS.

Section 1.1.    Transfer of Acquired Assets. At the Closing, and upon the terms and conditions herein set forth, Seller shall sell to Buyer, and Buyer shall acquire from Seller, all of Estate's right, title and interest in, to and under the following property, free and clear of all liens, claims and encumbrances, except as provided herein below (the "Acquired Assets").

1

       (a)     all right, title and interest in and to [describe the lot of assets] including but not limited to those assets listed on <u>Schedule 1.1(a)</u>.

       (b)     [Add any additional lots of assets to be included as Acquired Assets];

       Section 1.2.    <u>Excluded Assets</u>.    Any assets owned by the Estate which are not specifically identified above as being part of the Acquired Assets are deemed to be "Excluded Assets", including but not limited to (i) cash; (ii) deposits; (iii) accounts receivable; (iv) insurance; (v) rights in insurance; (vi) avoidance actions; and (vii) other Estate causes of action.

       Section 1.3.    [<u>Assumed and Assigned Contracts</u>. Buyer agrees to assume Seller's obligations arising from and after the Closing Date under the contracts designated by Buyer for assumption and assignment and approved by the Bankruptcy Court for assumption by Seller and assignment to Buyer ("<u>Assigned Contracts</u>"). Not later than 30 days after entry of the Sale Order, Buyer shall designate any executory contracts or unexpired leases that Buyer wants Seller to assume and assign to Buyer (the "<u>Designated Contracts</u>"). If the Bid Procedures set forth in the Sale Motion (defined below) are approved by the Bankruptcy Court, the following or similar procedures will govern the assumption and assignment of the Assigned Contracts. Not later than 30 days after entry of the Sale Order, the Trustee will file with the Court and serve on each non-Debtor party to a Designated Contract a "Cure Notice" setting forth the amount of cure owed thereunder according to the Debtor's books and records. The Cure Notice shall state (i) the Cure Amount, (ii) notify each non-Debtor party that such party's lease or contract may be assumed and assigned to the Buyer, and (iii) state the "Cure Objection Deadline". The Cure Objection Deadline shall be 4:00 p.m. (Eastern) 10 (ten) business days after the filing of the Cure Notice. Any objection to the Cure Amount must state with specificity what cure the non-Debtor party to the Designated Contract believes is required with appropriate documentation in support thereof. If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any Designated Contract or other document as of the date of the Cure Notice. Any objections not resolved between the parties shall be set for a hearing as fixed by the Bankruptcy Court. Any counterparty to any Designated Contract who does not file a Cure Objection by the Cure Objection Deadline, shall be forever barred from objecting to the Cure Amount or asserting or claiming any Cure Amount (other than the Cure Amount listed in the Cure Notice) against Seller, the Estate or Buyer. Any counterparty to a Designated Contract who does not file a timely objection to the assumption and assignment shall be deemed to have consented to the assumption and assignment of its Designated Contract to the Buyer and will be forever barred from objecting to such assumption and assignment on account of the Cure Amount, lack of adequate assurance or any other grounds. The Cure Amount fixed by the Bankruptcy Court with respect to any Assigned Contract shall be paid by Buyer directly to the counterparty to such contracts promptly after approval of the assumption and assignment. Further, Buyer shall provide adequate assurance of future performance under the Designated Contracts, as same is required by the Bankruptcy Court. In either event, the order approving assumption and assignment shall provide that upon payment of the applicable Cure Amount by the Buyer, such counterparty shall not have any remaining claim against Seller or the Estate related to any default under any such Assigned Contract. Seller makes no representation or warranty with respect to the future performance of any parties to the Assigned Contracts. Seller makes no representation or warranty as to whether any Designated Contracts can be assumed and assigned under applicable law or otherwise. Buyer acknowledges that the Bankruptcy Court may not approve assumption and

assignment of all contracts designated by the Buyer hereunder and agrees to close on the sale notwithstanding such risk.]

Section 1.4.    Assumption of Liabilities.  At the Closing, Buyer shall assume, and Buyer hereby agrees to thereafter pay, perform and discharge when due, all liabilities and obligations arising on or after the Closing Date, which relate to or arise from the Acquired Assets and Assigned Contracts; provided, however, that Buyer shall have no liability whatsoever or be deemed to have assumed any liabilities or obligations arising prior to the Closing Date and which relate to or arise from Acquired Assets and Assigned Contracts which shall at all times remain the responsibility of the Estate.

## ARTICLE 2.    CONSIDERATION

Section 2.1.    Consideration.  The aggregate consideration for the sale and transfer of the Acquired Assets is $[NUMBER] US Dollars in cash (the "Purchase Price"), which price shall be payable and deliverable in accordance with Section 3.3.   The Purchase Price shall be allocated as follows [if purchasing more than one lot of assets, allocate purchase price below]:

Section 2.2.    Deposit.  Concurrently with the execution and delivery of this Agreement, Buyer shall pay to Seller an amount equal to $[10% of Purchase Price] as a deposit (the "Deposit").  If this Agreement is terminated without the Closing occurring, the Deposit shall be disbursed in accordance with Section 8.1(f).  If the Closing occurs, the Deposit shall be applied (without interest) towards the Purchase Price.

Section 2.3.    363 Sale.  The Seller will seek approval and entry of the Sale Order pursuant to the motion filed by Seller under Section 363 of the Bankruptcy Code on _____ (the "Sale Motion").

## ARTICLE 3.    CLOSING AND DELIVERIES

Section 3.1.    Closing.   The consummation of the transactions contemplated hereby (the "Closing") shall take place within three (3) days after entry of the Sale Order (conditioned upon the Bankruptcy Court making a finding under Fed. R. Bankr. P 6004(h)) and if not, then on the first business day following the date on which the Sale Order becomes a final and non-appealable order), and no later than _____, 2017 (the "Closing Date"), at a place as agreed to by the parties.

Section 3.2.    Seller's Deliveries.  At the Closing, the sale, transfer, assignment and delivery by Seller of the Debtor's rights, title and interests the Acquired Assets to Buyer, as herein provided, shall be free and clear of all liens, claims and encumbrances and shall be effected on the Closing Date by bills of sale, endorsements, assignments and other instruments of transfer and conveyance, as well as the electronic transfer of all files and records of Seller relating to the Acquired Assets excluding any representations, warranties or covenants (other than those expressly set forth herein) and shall otherwise be consistent with the terms of this Agreement reasonably satisfactory in form and substance to counsel for Buyer.

Section 3.3.    Buyer's Deliveries.  At the Closing:

(a)    Buyer shall pay to Seller the Purchase Price by wire transfer of immediately available funds in accordance with instructions provided by the Seller;

## ARTICLE 4.    REPRESENTATIONS AND WARRANTIES

Section 4.1.    Representations and Warranties of Seller.  Seller represents and warrants to Buyer as follows:

(a)    Corporate Organization.  Debtor is in a chapter 7 proceeding in the Bankruptcy Court.  Subject to any necessary authority from the Bankruptcy Court, Seller has all requisite power and authority to consummate the transactions contemplated hereby.

(b)    Authorization and Validity.  Seller has all requisite power and authority to enter into this Agreement and, subject to the Bankruptcy Court's entry of the Sale Order, to carry out his obligations hereunder and thereunder.  This Agreement has been duly executed by Seller and, subject to the Bankruptcy Court's entry of the Sale Order, constitutes valid and binding obligations, enforceable against the Estate in accordance with their terms.

(c)    Litigation.  Except as disclosed on the Debtor's Statement of Financial Affairs (SOFA), to the best of Seller's knowledge, the Seller is not aware of any claims, actions, suits, proceedings or investigations pending or threatened concerning the Acquired Assets.

(d)    Disclaimer of other Representations and Warranties.  The Seller makes no representation or warranty, express or implied, at law or in equity, regarding the Acquired Assets (including, without limitation, the Assigned Contracts) or any assets, liabilities or operations, including, without limitation, with respect to capacity, condition, design, fitness for any particular purpose, merchantability, operation or quality, and any such other representations or warranties are hereby expressly disclaimed.  Seller expressly disclaims any representation or warranty, express, statutory, or implied, as to: (i) the content, character, or nature of any descriptive memorandum, report, brochure, chart, or statement prepared by third parties and relating to the Debtor or the Acquired Assets; (ii) any estimates of the value of the Acquired Assets, or future revenues generated by the Acquired Assets; (iii) the condition, quality, suitability, prior use, or design of the Acquired Assets; (iv) the merchantability or fitness for a particular purpose of the Acquired Assets; (v) the validity, enforceability, restriction-free nature, or transferability of any trademarks, copyrights, patents, domain names, or any other Intellectual Property Rights used by the Debtor in the Business, including, but not limited to, any software used in the Business; (vi) the rights any licensee may have under 11 U.S.C. § 365(n);or (vii) any other materials or information that may have been made available to Buyer or its Affiliates, or their employees, agents, consultants, representatives, or advisors in connection with the transactions contemplated by this Agreement or any discussion or presentation relating thereto.  BUYER HEREBY ACKNOWLEDGES AND AGREES THAT SELLER MAKES NO REPRESENTATION OR WARRANTY THAT THE BUSINESS DOES NOT NOR DO ANY OF DEBTOR'S PATENTS, COPYRIGHTS, TRADE SECRETS, DOMAIN NAMES, TRADEMARKS, OR OTHER INTELLECTUAL PROPERTY RIGHTS OF DEBTOR, INCLUDING, BUT NOT LIMITED TO, ANY SOFTWARE USED IN THE BUSINESS, VIOLATE OR INFRINGE ANY THIRD PARTY

4

INTELLECTUAL PROPERTY RIGHT, WHETHER SOUNDING IN PATENT, COPYRIGHT, TRADE SECRET OR TRADEMARK, WHETHER KNOWN OR UNKNOWN TO SELLER. BUYER HEREBY ACKNOWLEDGES AND AGREES THAT BUYER IS PURCHASING THE ACQUIRED ASSETS ON AN "AS-IS, WHERE-IS" BASIS AND "WITH ALL FAULTS." WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE SELLER MAKES NO REPRESENTATION OR WARRANTY REGARDING ANY ASSETS OTHER THAN THE ACQUIRED ASSETS, AND NONE SHALL BE IMPLIED AT LAW OR IN EQUITY.

Section 4.2.    Representations and Warranties of Buyer.  Buyer hereby represents and warrants to Seller as follows:

(a)    Corporate Organization.  Buyer is a [type of entity] duly formed, validly existing and in good standing under the laws of [state], and has all requisite limited liability company or corporate, as applicable, power and authority to own its properties and assets.

(b)    Authorization and Validity of Agreement.  Buyer has all requisite corporate or limited liability company, as applicable, power and authority to enter into this Agreement and to carry out its obligations hereunder.  The execution and delivery of this Agreement and the performance of Buyer's obligations hereunder have been duly authorized by all necessary limited liability company or corporate, as applicable, action by the board of directors (or equivalent) of Buyer, and no other limited liability company or corporate, as applicable, action on the part of Buyer is necessary to authorize such execution, delivery and performance.  This Agreement has been or will be duly executed by Buyer and constitutes, or will when executed constitute, its valid and binding obligation, enforceable against it in accordance with its terms.

(c)    No Conflict or Violation.  The execution, delivery and performance by Buyer of this Agreement does not and will not violate or conflict with any provision of the certificate of incorporation or by-laws (or equivalent documents) of Buyer and does not and will not violate any provision of law, or any order applicable to Buyer, nor will it result in a breach of or constitute (with due notice or lapse of time or both) a default under any contract to which Buyer is a party or by which it is bound or to which any of its properties or assets is subject.

(d)    Consents and Approvals.  The execution, delivery and performance of this Agreement does not and will not require the consent or approval of, or filing with, any government or any other Person except (i) as may be required to be obtained by Buyer after the Closing in order to own or operate any of the Acquired Assets; (ii) for entry of the Sale Order by the Bankruptcy Court; or (iii) for such consents, approvals and filings, of which the failure to obtain or make would not, individually or in the aggregate, have a Material Adverse Effect on the ability of Buyer to consummate the transactions contemplated hereby.

(e)    Investigation by Buyer.  Buyer has conducted its own independent review and analysis of the Acquired Assets, the Assumed Liabilities, and the Assigned Contracts.  Buyer has conducted its own independent review of all Orders of, and all motions, pleadings, and other submissions to, the Bankruptcy Court in connection with Bankruptcy Case.  In entering into this Agreement, Buyer has relied solely upon its own investigation and analysis, and Buyer (i) acknowledges that neither Seller nor any of its Affiliates or Related Persons makes or has made any representation or warranty, either express or implied, as to the accuracy or completeness of any

of the information provided or made available to Buyer or its Affiliates or Related Persons, except for the representations and warranties contained in Section 4.1 (which are subject to the limitations and restrictions contained in this Agreement); and (ii) agrees, to the fullest extent permitted by law, that none of Seller, its Affiliates or any of their respective Related Persons shall have any liability or responsibility whatsoever to Buyer or its Affiliates or Related Persons on any basis (including, without limitation, in contract or tort, under federal or state securities laws or otherwise) based upon any information provided or made available, or statements made, to Buyer or its Affiliates or Related Persons (or any omissions therefrom), including, without limitation, in respect of the specific representations and warranties of Seller set forth in this Agreement, except, with regard to Seller, for the representations and warranties contained in Section 4.1 and, with respect to such representations and warranties, subject to the limitations and restrictions contained in this Agreement.

Section 4.3.   Warranties Exclusive.   The parties acknowledge that the representations and warranties contained in Article 4 are the only representations or warranties given by the parties and that all other express or implied warranties are disclaimed. Without limiting the foregoing Buyer acknowledges that the Acquired Assets are conveyed "AS IS", "WHERE IS" and "WITH ALL FAULTS" and that ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE DISCLAIMED. WITHOUT LIMITING THE FOREGOING THE BUYER ACKNOWLEDGES THAT SELLER AND SELLER'S AFFILIATES AND THEIR RESPECTIVE RELATED PERSONS HAVE MADE NO REPRESENTATION OR WARRANTY CONCERNING (I) ANY USE TO WHICH THE ACQUIRED ASSETS MAY BE PUT, (II) ANY FUTURE REVENUES, COSTS, EXPENDITURES, CASH FLOW, RESULTS OF OPERATIONS, FINANCIAL CONDITION OR PROSPECTS THAT MAY RESULT FROM THE OWNERSHIP, USE OR SALE OF THE ACQUIRED ASSETS, (III) ANY OF DEBTOR'S PATENTS, COPYRIGHTS, TRADE SECRETS, DOMAIN NAMES, TRADEMARKS, OR OTHER INTELLECTUAL PROPERTY RIGHTS OF DEBTOR, INCLUDING, BUT NOT LIMITED TO, ANY SOFTWARE USED IN THE BUSINESS, (IV) ANY OTHER INFORMATION OR DOCUMENTS MADE AVAILABLE TO BUYER OR ITS AFFILIATES OR RELATED PERSONS OR (V) EXCEPT AS EXPRESSLY SET FORTH IN SECTION 4.1, THE CONDITION OF THE ACQUIRED ASSETS INCLUDING, WITHOUT LIMITATION, COMPLIANCE WITH ANY FEDERAL TRADE COMMISSION LAWS OR OTHER LAWS.

Section 4.4.   Survival of Representations and Warranties.   None of the representations or warranties of Seller set forth in this Agreement or in any certificate delivered pursuant to Section 7.2(a) shall survive the Closing.

ARTICLE 5.   COVENANTS AND OTHER AGREEMENTS.

Section 5.1.   Covenants of Seller.

(a)      At the request and the sole expense of Buyer, at any time after the Closing Date, Seller shall promptly execute and deliver such documents, and take other acts, as Buyer or its counsel may reasonably request to effectuate the purposes of this Agreement.

Section 5.2.    Covenants of Buyer.

(a)    At the request of Seller, at any time after the Closing Date, Buyer shall promptly execute and deliver such documents as Buyer or its counsel may reasonably request to effectuate the purposes of this Agreement.

(b)    Buyer agrees to remove all Acquired Assets and associated documents and records pertaining to such Acquired Assets from their locations within ten days of Closing or not later than June 30, 2017.  In the event any of the Acquired Assets remain at any location beyond June 30, 2017, Buyer shall be responsible for the associated rent or storage charges until the items are removed.

Section 5.3.    Bankruptcy Matters.    Seller and Buyer shall use commercially reasonable efforts to cooperate, assist and consult with each other to secure the entry of the Sale Order following the date hereof, and to consummate the transactions contemplated by this Agreement, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Buyer under this Agreement and furnishing any testimony regarding the transactions contemplated hereby.

## ARTICLE 6.   TAXES.

Section 6.1.    Taxes Related to Purchase of Assets.    All federal, state and local sales, transfer, gains, excise, value-added or other similar Taxes, if any, including, without limitation, all state and local Taxes in connection with the transfer of the Acquired Assets, and all recording and filing fees (collectively, "Transaction Taxes"), that may be imposed by reason of the sale, transfer, assignment and delivery of the Acquired Assets, and are not exempt under § 1146(a) of the Bankruptcy Code, shall be paid by Buyer.  Buyer and Seller agree to cooperate to determine the amount of Transaction Taxes payable in connection with the transactions contemplated under this Agreement.  Seller agrees to assist Buyer reasonably in the preparation and filing of any and all required returns for or with respect to such Transaction Taxes with any and all appropriate taxing authorities.

Section 6.2.    Cooperation on Tax Matters.

(a)    Buyer and Seller agree to furnish or cause to be furnished to each other, as promptly as practicable, such information and assistance relating to the Acquired Assets and the Assumed Liabilities as is reasonably necessary for the preparation and filing of any Tax Return, claim for refund or other required or optional filings relating to Tax matters, for the preparation for and proof of facts during any Tax audit, for the preparation for any Tax protest, for the prosecution or defense of any suit or other proceeding relating to Tax matters and for the answer to any governmental or regulatory inquiry relating to Tax matters.  All tax refunds due or which may be claimed relative to the Acquired Assets or otherwise shall belong to the Trustee on behalf of the Estate and are not part of the Acquired Assets.

(b)    Buyer agrees to retain possession, at its own expense, of all accounting, business, financial and Tax records and information (i) relating to the Acquired Assets that are in existence on the Closing Date and transferred to Buyer hereunder and (ii) coming into existence

after the Closing Date that relate to the Acquired Assets, for a period of at least three years from the Closing Date. In addition, from and after the Closing Date, Buyer agrees that it will provide access to Seller and its attorneys, accountants and other representatives (after reasonable notice and during normal business hours and without charge) to the books, records, documents and other information relating to the Acquired Assets as Seller may reasonably deem necessary to (x) properly prepare for, file, prove, answer, prosecute and/or defend any such Tax Return, claim, filing, tax audit, tax protest, suit, proceeding or answer or (y) administer or complete the administration of the Debtor's case under chapter 7 of the Bankruptcy Code. Such access shall include, without limitation, access to any computerized information retrieval systems relating to the Acquired Assets.

ARTICLE 7.    CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES.

Section 7.1.    Conditions Precedent to Performance by Seller. The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to the fulfillment, at or before the Closing Date, of the following conditions; any one or more of which (other than the condition contained in Section 7.1(c)) may be waived by Seller in its sole discretion:

(a)    Representations and Warranties of Buyer.    All representations and warranties made by Buyer in Section 4.2 shall be accurate in all material respects on and as of the Closing Date as if again made by Buyer on and as of such date, except for inaccuracies that do not result in a Material Adverse Effect on Buyer's ability to perform its obligations hereunder, and Seller shall have received a certificate, dated the Closing Date and signed by the president, or equivalent, of Buyer, to that effect.

(b)    Performance of the Obligations of Buyer. Buyer shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Closing Date.

(c)    Consents and Approvals. The Bankruptcy Court shall have entered the Sale Order, in form and substance reasonably satisfactory to Seller, and no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date.

(d)    No Violation of Orders. No preliminary or permanent injunction or other order that declares this Agreement invalid or unenforceable in any respect or which prevents the consummation of the transactions contemplated hereby shall be in effect.

Section 7.2.    Conditions Precedent to the Performance by Buyer. The obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing Date, of the following conditions, any one or more of which (other than the condition contained in Section 7.2(b)) may be waived by Buyer in its sole discretion:

(a)    Consents and Approvals. The Bankruptcy Court shall have entered the Sale Order and no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date.

(b)    No Violation of Orders.  No preliminary or permanent injunction or other order that declares this Agreement invalid in any respect or prevents the consummation of the transactions contemplated hereby shall be in effect.

## ARTICLE 8.  TERMINATION

Section 8.1.    Termination:  This Agreement may be terminated at any time prior to the Closing Date:

(a)    By either Seller or Buyer if the Closing shall not have occurred by ___ _, 2017; provided, however, that such date may be extended by Seller and Buyer upon mutual agreement.

(b)    By either Seller or Buyer upon the entry of an order of the Bankruptcy Court authorizing the sale of the Acquired Assets in a Competing Transaction; provided, however, that Buyer shall not be permitted to terminate this Agreement upon the entry of such an order if Buyer is determined to be the second highest bidder for the Acquired Assets in which case Buyer is required to remain bound by the terms of this Agreement pursuant until the earlier of (1) closing of the Competing Transaction or (2) ____, 2017.

(c)    By Seller. if Buyer shall have breached any of its obligations, representations, warranties, covenants or agreements contained in this Agreement, which breach cannot be or has not been cured within three (3) Business Days after the giving of written notice by Seller to Buyer specifying such breach.

(d)    By Buyer if Seller shall have breached any of its obligations, representations, warranties, covenants or agreements contained in this Agreement, which breach cannot be or has not been cured within three (3) Business Days after the giving of written notice by Buyer to Seller specifying such breach; or

(e)    By the mutual written consent of Seller and Buyer.

(f)    Effect of Termination.  In the event of termination of this Agreement as provided in Section 8.1, this Agreement shall forthwith become void and there shall be no liability on the part of either party; provided, however, that in the event this Agreement is terminated pursuant to Section 8.1(a) or (c) and Seller is not then in breach of Seller's obligations hereunder, then Seller shall be entitled to retain the Deposit and all interest thereon as liquidated damages and as its sole and exclusive remedy.  In the event of termination of this Agreement for any reason other than pursuant to Section 8.1(c), and provided that Buyer is not then in breach of Buyer's obligations hereunder, Buyer shall be entitled to return of the Deposit, without any interest thereon. The return of the Deposit by Seller shall be Buyer's sole remedy in the event of a breach of Sellers' obligation hereunder.

## ARTICLE 9.  MISCELLANEOUS.

Section 9.1.    Successors and Assigns.  Except as otherwise provided in this Agreement, no party hereto shall assign this Agreement or any rights or obligations hereunder without the prior written consent of the other party hereto, and any such attempted assignment

without such prior written consent shall be void and of no force and effect. This Agreement shall inure to the benefit of and shall be binding upon the successors and permitted assigns of the parties hereto.

Section 9.2.    Governing Law; Jurisdiction. This Agreement shall be construed, performed and enforced in accordance with, and governed by, the laws of the United States of America and the State of Delaware (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by the Bankruptcy Code. The parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court.

Section 9.3.    Expenses. Except as otherwise provided herein, each of the parties hereto shall pay its own expenses in connection with this Agreement and the transactions contemplated hereby, including, without limitation, any legal and accounting fees, whether or not the transactions contemplated hereby are consummated. Buyer shall pay any fees, costs, and expenses associated with recording an assignment of any of the Acquired Assets.

Section 9.4.    Broker's and Finder's Fees. Each of the parties represents and warrants that it has dealt with no broker or finder in connection with any of the transactions contemplated by this Agreement and, insofar as such party knows, no broker or other Person is entitled to any commission or finder's fee in connection with any of these transactions.

Section 9.5.    Severability. In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void or unenforceable, said provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect only if, after excluding the portion deemed to be unenforceable, the remaining terms shall provide for the consummation of the transactions contemplated hereby in substantially the same manner as originally set forth at the later of the date this Agreement was executed or last amended.

Section 9.6.    Notices.

(a)    All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (i) on the date of service, if served personally on the party to whom notice is to be given; (ii) on the day after delivery to Federal Express or similar overnight courier or the next day Express Mail service maintained by the United States Postal Service; or (iii) on the third day after mailing, if mailed to the party to whom notice is to be given, by first class mail, certified, postage prepaid and properly addressed, to the party as follows:

If to Seller:

David W. Carickhoff
300 Delaware Avenue, Suite 1100
Wilmington, DE  19801
Attention:  David Carickhoff, Esq.
Email: dcarickhoff@archerlaw.com

Additional copy to:

>Archer & Greiner, P.C.
>300 Delaware Avenue, Suite 1100
>Wilmington, DE  19801
>Attention:  Alan M. Root, Esq.
>Email: aroot@archerlaw.com

If to Buyer:

>[NAME]
>[ADDRESS 1]
>[ADDRESS 2]
>Attention: [NAME]
>Email: []

Additional copy to:

>[LAW FIRM]
>[ADDRESS 1]
>[ADDRESS 2]
>Attention:  [NAME]
>Email: []

(b)    Any party may change its address for the purpose of this <u>Section 9.6</u> by giving the other party written notice of its new address in the manner set forth above.

Section 9.7.    <u>Amendments; Waivers</u>.    This Agreement may be amended or modified, and any of the terms, covenants, representations, warranties or conditions hereof may be waived, only by a written instrument executed by the parties hereto, or in the case of a waiver, by the party waiving compliance.  Any waiver by any party of any condition, or of the breach of any provision, term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall not be deemed to be or construed as a furthering or continuing waiver of any such condition, or of the breach of any other provision, term, covenant, representation or warranty of this Agreement.

Section 9.8.    <u>Public Announcements</u>.    Except for any description of the Sale in any motion or document filed with the Bankruptcy Court, no party shall make any press release or public announcement concerning the transactions contemplated by this Agreement without the prior written approval of the other Party.  The Parties acknowledge that Seller shall file this Agreement with the Bankruptcy Court in connection with obtaining the Sale Order and may file and serve other related notices regarding this Agreement as Seller deems appropriate.

Section 9.9.    <u>Entire Agreement</u>.    This Agreement contains the entire understanding between the parties hereto with respect to the transactions contemplated hereby and supersede and replace all prior and contemporaneous agreements and understandings, oral or

written, with regard to such transactions. All schedules hereto and any documents and instruments delivered pursuant to any provision hereof are expressly made a part of this Agreement as fully as though completely set forth herein.

Section 9.10.    Parties in Interest. Nothing in this Agreement is intended to or shall confer any rights or remedies under or by reason of this Agreement on any Persons other than Seller and Buyer and their respective successors and permitted assigns. Nothing in this Agreement is intended to or shall relieve or discharge the obligations or liability of any third Persons to Seller or Buyer. This Agreement is not intended to nor shall give any third Persons any right of subrogation or action over or against Seller or Buyer.

Section 9.11.    Headings, Interpretation, Gender. Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context requires. Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed followed by the words "without limitation." Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Buyer or Seller, whether under any rule of construction or otherwise. No party to this Agreement shall be considered the draftsman. On the contrary, this Agreement has been reviewed, negotiated and accepted by all parties and their attorneys and shall be construed and interpreted according to the ordinary meaning of the words so as fairly to accomplish the purposes and intentions of all the parties. The table of contents and the captions and section headings contained in this Agreement are for convenience of reference only, do not form a part of this Agreement and shall not affect in any way the meaning or interpretation of this Agreement. All references in this Agreement to "Section" or "Article" shall be deemed to be references to a Section or Article of this Agreement. All references to "herein" or "hereof" or "hereunder" and similar phrases shall be broadly construed to refer to the entire Agreement and not merely to the specific clause, section, or article.

Section 9.12.    Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original executed counterpart of this Agreement.

## ARTICLE 10.    DEFINITIONS.

Section 10.1.    Certain Terms Defined. As used in this Agreement, the following terms have the following meanings:

"Affiliate" means, with respect to any Person, any Person directly or indirectly controlling, controlled by or under direct or indirect common control with such other Person.

"Business Day" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in Wilmington, Delaware are authorized by law or other governmental action to close.

"Code" means the Internal Revenue Code of 1986, as amended.

"Cure Amount" shall mean the amount fixed by the Bankruptcy Court as being the amount necessary to cure all defaults under an executory contract or unexpired lease designated by Buyer to become an Assigned Contract.

"Intellectual Property Rights" means any and all intellectual property rights of whatever nature and in whatever form including rights in all inventions, patents, trademarks, service marks, registered designs, domain names, pending applications for any of the foregoing, trade and business names, brand names, unregistered trademarks and service marks, unregistered designs and rights in designs, trade dress, trade secret, formula, copyrights, database rights and rights in software, moral rights, performers rights, know-how, other intellectual property rights including all permits, and all other similar or equivalent industrial, intellectual or commercial rights or property subsisting under the laws of each and every jurisdiction throughout the world whether registered or not, and whether vested, contingent or future, and all divisions, continuations, continuations-in-part, substitutes, reversions, renewals and extensions of any of the foregoing, and all rights under permits, laws or otherwise in relation to any of the foregoing, as well as the rights to sue for past, present, and future infringement of any and all such intellectual property rights.

"IRS" means the Internal Revenue Service.

"Lien" means any mortgage, pledge, security interest, encumbrance, lien (statutory or other) or conditional sale agreement, other than (a) a lessor's interest in, and any mortgage, pledge, security interest, encumbrance, lien (statutory or other) or conditional sale agreement on or affecting a lessor's interest in, property underlying any leases; (b) any imperfection of title with respect to any asset that does not materially interfere with the present occupancy, use or marketability of such asset and the continuation of the present occupancy or use of such asset; and (c) such covenants, conditions, restrictions, easements, encroachments or encumbrances that are not created pursuant to mortgages or other financing or security documents, or any other state of facts, that do not materially interfere with the present occupancy or use of an asset.

"Material Adverse Effect" means a state of facts, event, change or effect on the value of the Acquired Assets that results in a material adverse effect on the value of the Acquired Assets taken as a whole, but excludes any state of facts, event, change or effect caused by events, changes or developments relating to (A) any action of the Seller pursuant to any order of the Bankruptcy Court entered prior to the date hereof, including, without limitation, orders entered in connection with the sale of the Seller's other assets or the liquidation of Seller's inventory, the implementation of this Agreement, the transactions contemplated by this Agreement, any ancillary agreements or the announcement thereof; (B) changes or conditions affecting the Debtor's industry generally; (C) changes in economic, regulatory or political conditions generally; (D) changes resulting from, or from any motion, application, pleading or order filed related to, the Bankruptcy Case; or (E) any act(s) of war or of terrorism.

"Person" means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government.

"Related Person" means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, investment bankers or representatives of any such Person.

"Subsidiary(ies)" means, when used with respect to any specified Person, any other Person (i) of which the specified Person or any Subsidiary thereof is a general partner, (ii) of which the specified Person or a Subsidiary thereof own at least a majority of the securities or other interests having by their terms ordinary voting power to elect a majority of the board of directors or others performing similar functions for such other Person of which owns the specified person or a Subsidiary thereof, or (iii) that is directly or indirectly controlled by the specified Person or any Subsidiary thereof.

"Tax Return" means any report, return, information return, filing or other information, including any schedules, exhibits or attachments thereto, and any amendments to any of the foregoing required to be filed or maintained in connection with the calculation, determination, assessment or collection of any Taxes (including estimated Taxes).

**[Signatures are on the following page.]**

14

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

[BUYER]

By: _____
Name:
Title:

CHAPTER 7 TRUSTEE, Seller

By: _____
Name: David W. Carickhoff
Title: Chapter 7 Trustee of the bankruptcy estate of
Mad Catz, Inc..

Schedule 1.1(a)
Acquired Assets

116053259v2

16

# EXHIBIT A-2

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT**, dated as of _____, 2017 (this "Agreement"), is made by and between David W. Carickhoff (the "Trustee"), as chapter 7 trustee for Mad Catz, Inc.. ("Debtor"), as Seller and _____ ("Buyer") having an address _____, as Buyer.

**WHEREAS,** On March 30, 2017, the Debtor filed a voluntary petition under chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Case No. 17-10679 (KG) (the "Bankruptcy Case"). On March 31, 2017, the Trustee was appointed as chapter 7 trustee of the Debtor's estate pursuant to section 701(a) of the Bankruptcy Code;

**WHEREAS,** Buyer desires to purchase certain assets of the Debtor (collectively, the "Assets") more particularly set out in Schedule 1.01, all in the manner and the terms and conditions set forth herein and in accordance with sections 105, and 363 and other applicable provisions of the Bankruptcy Code; and

**WHEREAS,** the Acquired Assets (defined below) will be sold pursuant to an order of the Bankruptcy Court approving such sale under sections 105, and 363 of the Bankruptcy Code, and the terms and conditions of this Agreement.

**NOW, THEREFORE,** in consideration of the foregoing and the respective representations, warranties, covenants and agreements set forth herein, the parties hereto agree as follows:

## ARTICLE 1

## PURCHASE AND SALE OF ASSETS

Section 1.01    Acquired Assets. On the terms and subject to the conditions precedent set forth in this Agreement, at the Closing, the Trustee, shall sell, assign, transfer, convey, and deliver to Buyer and Buyer shall purchase and accept from the Trustee, free and clear of all liens, claims and encumbrances, all of Debtor's right, title, and interest in and to the Assets as set forth on Schedule 1.01, as such exhibit may be amended from time to time by Buyer and the Trustee prior to Closing (collectively, the "Acquired Assets").

Section 1.02    Assumed Liabilities. Buyer shall assume and shall in due course pay, satisfy, discharge and perform all liabilities and obligations related to the Acquired Assets arising from and after the date of Closing.

Section 1.03    Excluded Assets. Excluded assets are all assets not specifically included in the Acquired Assets (the "Excluded Assets"). For the avoidance of doubt, the following, without limitation, are Excluded Assets, (i) any personally identifiable information of the Debtor's former employees, (ii) any cash of the Debtor, (iii) any accounts receivable of the Debtor, (iv) any deposits of the Debtor, and (v) any causes of action of the Debtor. The Excluded Assets are not being sold to Buyer hereunder. To the extent any personally identifiable

information of the Debtor's former employees are inadvertently included with the Acquired Assets, Buyer shall not use such items and shall promptly delete such items.

Section 1.04    Excluded Liabilities. The Buyer shall not assume, or have any liability, responsibility or obligation, directly or indirectly, for any liability, responsibility or obligation of the Debtor or which in any way relate to or arise from the Excluded Assets (whether known or unknown, fixed or contingent, matured or unmatured) (the "Excluded Liabilities"), and all such Excluded Liabilities shall at and after the Closing remain the sole and exclusive responsibility of the Debtor.

Section 1.05    Purchase Price. The purchase price (the "Purchase Price") for the purchase, sale, assignment and conveyance of Debtor's right, title and interest in and to the Acquired Assets shall be:$ _____, which shall be paid in cash at Closing.  Upon execution of this Agreement, $_____ shall be deposited ("Deposit") with the Trustee, to be held in escrow. The Deposit shall be subject to the terms and conditions of the Court approved Bid Procedures

Section 1.06    No Warranty.  The Acquired Assets are being sold and transferred without any warranty or representation of any kind, and none shall be implied at low or in equity. BUYER HEREBY ACKNOWLEDGES AND AGREES THAT BUYER IS PURCHASING THE ACQUIRED ASSETS ON AN "AS-IS, WHERE-IS" BASIS AND "WITH ALL FAULTS."

Section 1.07    Higher Offers.  Buyer recognizes that the Trustee is obligated to accept any offer that the Trustee reasonably concludes is a higher and better offer for the Acquired Assets.  In the event that the Trustee receives and accepts such an offer, then the Trustee shall have no liability to Buyer other than to return the Deposit to Buyer.

## ARTICLE 2

## THE CLOSING

Section 2.01    Closing.  Closing shall occur within ten (10) days after the sale of the Acquired Assets is approved by an order of the Bankruptcy Court in a form reasonably acceptable to Buyer (the "Sale Order").

(a)    Deliveries to Buyer.  The Trustee shall deliver to Buyer at Closing a bill of sale prepared by the Buyer, in form and substance reasonably satisfactory to the Trustee, and any other instruments of sale, assignment, transfer and conveyance that, in the reasonable judgment of Buyer are reasonably necessary to effectively vest in Buyer good and valid title to and perfect the interests of Buyer in the Acquired Assets, free and clear of all liens, claims and encumbrances, pursuant to the terms of this Agreement.  Buyer shall be responsible for all recording, filing and/or transfer fees or taxes.

## ARTICLE 3

## CONDITIONS PRECEDENT TO OBLIGATIONS OF TRUSTEE AND BUYER

The respective obligations of each party to effect the transactions contemplated by this Agreement shall be subject to the satisfaction of the following conditions:

Section 3.01    Bankruptcy Court Order.  The Sale Order shall have been entered by the Bankruptcy Court and shall be in full force and effect, and all conditions contemplated by the Sale Order to consummate the transactions contemplated hereby shall have been satisfied.

Section 3.02    Injunctions; Orders.  There shall be no injunction, order, judgment, ruling or decree of any nature of any court or Governmental Authority of competent jurisdiction that is in effect that prohibits or materially restrains the consummation of the transactions contemplated under this Agreement.

## ARTICLE 4

## GENERAL PROVISIONS

Section 4.01    Notices.  All notices, requests, claims, demands and other communications hereunder shall be in writing and shall be deemed given upon (a) confirmation of receipt of a facsimile transmission, (b) confirmed delivery by a standard overnight carrier or when delivered by hand, or (c) the expiration of three business days after the day when mailed by registered or certified mail (postage prepaid, return receipt requested), addressed to the respective parties at the following addresses (or such other address for a party as shall be specified by like notice):

(a)    If to Buyer to:

(b)    If to the Trustee, to:

Archer & Greiner, P.C
300 Delaware Avenue, Suite 1100
Wilmington, DE  19801
Attention: David W. Carickhoff
Telecopy: (302) 777-4352
Email: dcarickhoff@archerlaw.com

Section 4.02    Entire Agreement, Assignment.  This Agreement (including the Exhibits, Schedules and the other documents and instruments referred to herein) constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral, among the parties or any of them, with respect to the subject matter hereof.  No party shall assign its rights hereunder prior to the Closing without the written consent of the other.  No such assignment shall relieve the assignor of any of its obligations hereunder.

Section 4.03    Governing Law; Submission to Jurisdiction.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to the rules of conflict of laws of the State of Delaware or any other jurisdiction.  The parties hereto irrevocably and unconditionally consent to submit to the jurisdiction of the Bankruptcy Court for any litigation arising out of or relating to this Agreement and the transactions contemplated thereby (and agree not to commence any litigation relating thereto except in the Bankruptcy Court).

Section 4.04    Expenses.  Except as set forth in this Agreement, whether or not the transactions contemplated by this Agreement are consummated, all costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.  The foregoing shall not affect the legal right, if any, that any party hereto may have to recover expenses from any other party that breaches its obligations hereunder.

Section 4.05    Amendment.  This Agreement and the Exhibits and Schedules hereto may not be amended except by an instrument in writing signed on behalf of all the parties hereto.

Section 4.06    Waiver.  At any time prior to the Closing Date, Buyer, on the one hand, and the Trustee, on the other hand, may (a) extend the time for the performance of any of the obligations or other acts of the other parties hereto, (b) waive any inaccuracies in any document delivered pursuant hereto, and (c) waive compliance with any of the agreements or conditions contained herein.  Any agreement on the part of a party hereto to any such extension or waiver shall be valid only if (and after) set forth in an instrument in writing signed on behalf of such party (and delivered to all other parties hereto).

Section 4.07    Counterparts; Effectiveness.  This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement. This Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.  Buyer acknowledges that this Agreement is subject to Bankruptcy Court approval and that the Trustee is not bound by this Agreement unless and until the Bankruptcy Court approves it.

Section 4.08    Parties of Interest.  Nothing in this Agreement, express or implied, is intended to confer upon any person not a party to this Agreement any rights or remedies of any nature whatsoever under or by reason of this Agreement.

**IN WITNESS WHEREOF**, Buyer and the Trustee, on behalf of Debtor's estate, have caused this Agreement to be executed on their behalf by their officers thereunto duly authorized, as of the date first above written.

**DAVID W. CARICKHOFF, CHAPTER 7**
**TRUSTEE FOR DEBTOR'S ESTATE**


By:_____
Name: David W. Carickhoff
Title:  Chapter 7 Trustee



**[BUYER]**

By:_____
Name:
Title:

## Schedule 1.01

**Acquired Assets**

116124756v1