## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| MAD CATZ, INC., | Case No. 17-10679 (KG) |
| Debtor. | **Hearing Date: June 21, 2017 at 10:00 a.m. (ET)**<br>**Objections Due: June 14, 2017 at 4:00 p.m. (ET)** |

## MOTION OF DAVID W. CARICKHOFF, CHAPTER 7 TRUSTEE, FOR ORDER (I) AUTHORIZING THE TRUSTEE TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, AND (IV) APPROVING SHARING ARRANGEMENT

David W. Carickhoff, the chapter 7 trustee (the "Trustee") of the bankruptcy estate ("Estate") of Mad Catz, Inc. (the "Debtor") hereby submits this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Cash Collateral Order"), pursuant to sections 105(a), 361, 362, and 363of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004(h), 9014, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"):

    a.    authorizing the Trustee to use cash collateral of Sterling National Bank, as administrative agent (the "Agent") for the Lenders, as defined in that certain Loan and Security Agreement (as defined below) (the "Lenders" and with the Agent, collectively, the "Secured Parties") pursuant to section 363 of the Bankruptcy Code;

    b.    granting to the Secured Parties adequate protection against the diminution in value of the Collateral (as defined below);

    c.    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Cash collateral Order;  and

    d.    approving a sharing arrangement between the Trustee and the Secured Parties (as described below, the "Sharing Arrangement").

## JURISDICTION

2.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105, 361, 362, and 363, of the Bankruptcy Code, as complimented by Bankruptcy Rules 2002, 4001, 6004(h), and 9014 and Local Rule 4001-2.

## BACKGROUND

4.      On March 30, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

5.      David W. Carickhoff has been appointed as chapter 7 trustee.

6.      The section 341(a) meeting of creditors was held and concluded on May 10, 2017.

7.      Prior to ceasing operations, the Debtor was a global provider of interactive entertainment products, primarily in the gaming industry.  The Debtor's  products were catered to gamers across multiple platforms including in-home gaming consoles, handheld gaming consoles, computers, smart phones, tablets and other smart devices.

8.      The First Secured Parties allege as follows:

        a.      As of the Petition Date, the Debtor owed the Secured Parties the sum of $4,703,521.23 (the "Pre-Petition Secured Liabilities");

        b.      The Pre-Petition Secured Liabilities are secured by a first priority continuing security interest (the "Pre-Petition  Lien") granted by the Debtor in and to all assets of the Debtor, whether then existing or thereafter acquired or arising, or in which Debtor otherwise has rights, and any and all products and proceeds thereof (the "Collateral") pursuant to (i) that certain Loan and Security Agreement dated as of June 30, 2015, by and between the Debtor as borrower, and Agent, as agent for Lenders, as may have been amended, amended and restated, modified or supplemented (the "Loan and Security Agreement"); (ii) that certain Security Agreement; (iii) that certain Patent Copyright, and Trademark Security Agreement; and (iv) all other documents related thereto (collectively, the "Loan Documents");

2

       c.      The Pre-Petition Lien was perfected by (i) the filing of UCC financing statements with the secretary of state of the state of organization of the Debtor and (ii) the execution of deposit account control agreements; and

       d.      Debtor cash and cash equivalents and proceeds of the Collateral now and hereafter received constitute cash collateral of the Secured Parties ("Cash Collateral") within the meaning of section 363(a) of the Bankruptcy Code.

    9.    The Trustee has not yet had an adequate opportunity to investigate the Secured Parties allegations as set forth in paragraphs eight above, or the amount, extent, validity, priority, and perfection of the Pre-Petition Secured Liabilities and/or the Pre-Petition Lien.

## MATERIAL TERMS OF CASH COLLATERAL ORDER

    10.    The Trustee and the Agent, on behalf of the Secured Parties, have engaged in extensive arms' length negotiations, which have resulted in the consensual Cash Collateral Order attached hereto as **Exhibit A**.  Among other things, the Cash Collateral Order provides the Secured Parties with adequate protection and sets up the Sharing Arrangement whereby the Secured Parties have agreed to carve-out from the proceeds of their Collateral unencumbered cash to fund the administration this chapter 7 case and a distribution to creditors.

    11.    The following is a summary of the material terms of the Cash Collateral Order, in accordance with Bankruptcy Rules 4001(b) and (d) and Local Bankruptcy Rule 4001-2(a)(ii):[1]

| Material Terms and Para of Order | Summary of Material Terms |
|---|---|
| Parties with an Interest in the Cash Collateral (¶E) | The principal party with an interest in the Cash Collateral is the  Agent, on behalf of the Secured Parties.<br><br>**The Secured Parties consent to the Trustee's use of Cash Collateral, subject to the adequate protection and other provisions provided in the Cash Collateral Order.** |

---

[1] This summary is qualified in its entirety by reference to the provisions of the Cash Collateral Order.  The proposed Cash Collateral Order will control in the event of any inconsistency between this Motion and the proposed Cash Collateral Order.

| | |
|---|---|
| Use of Cash Collateral (¶2) | Subject to the terms and conditions of the Cash Collateral Order, the Trustee is authorized to use Cash Collateral for, *inter alia* (a) preservation of the Debtor's assets, books and records (including its servers); (b) the liquidation and sale of the Debtor's assets and personal property; (c) the collection and/or liquidation of receivables generated by the Debtor's operations; and (d) payment of costs of administration of the Chapter 7 Case, including but not limited to the Trustee's professionals in accordance with the approved Budget. |
| Adequate Protection (¶3) | As adequate protection for, and solely to the extent of any decrease in value of the interests of the Secured Parties in the Collateral (including the Cash Collateral), on account of the Trustee's use, sale or lease of the Collateral (including the Cash Collateral) during the Chapter 7 Case, the effects of the Cash Collateral Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Agent, on behalf of the Secured Parties, will be granted a replacement perfected security interest under Section 361(2) of the Bankruptcy Code in the Collateral to the extent that the Cash Collateral is used by the Trustee, with the same extent, priority, validity and enforceability as the Pre-Petition Lien (the "<u>Adequate Protection Lien</u>"). <br><br> **Notwithstanding the foregoing, the Adequate Protection Lien shall not apply to: (a) avoidance claims or recoveries under chapter 5 of the Bankruptcy Code**; (b) any property of the Debtor (or the proceeds thereof) that was not encumbered by the Pre-Petition Lien as of the Petition Date;  and/or (c) the proceeds of the sale of any asset that is excluded collateral under the Loan Documents. |
| Evidence of Adequate Protection Lien (¶4) | The Cash Collateral Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Lien without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the Adequate Protection Lien, or to entitle the Secured Parties to the priorities granted pursuant to the Cash Collateral Order. <br><br> Notwithstanding the foregoing, the Agent, on behalf of the Secured Parties, may, in its sole discretion, file such security agreements, control agreements, pledge agreements, financing statements, mortgages, notices of liens and other similar documents, and the Cash Collateral Order grants relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 7 Case. <br><br> The Trustee shall execute and deliver to the Agent, on behalf of Secured Parties, all such financing statements, mortgages, notices and other documents as the Secured Parties may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of the Adequate Protection Liens granted by the Cash Collateral Order.  The Agent, on behalf of the Secured Parties, in its discretion, may file a photocopy of the Cash Collateral Order as a financing statement with any recording officer designated to file financing statements or with |

| | |
|---|---|
| | any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of the Cash Collateral Order. The Adequate Protection Lien shall be valid and enforceable notwithstanding the dismissal of the Chapter 7 Case. |
| Disposition of Collateral (¶ 5) | Except as may be set forth in the Cash Collateral Order or in a further order of the Court entered after notice to the Agent, on behalf of the Secured Parties (and any other person required to receive notice) and a hearing, the Trustee shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, without the prior written consent of the Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the Agent). All proceeds of the collection, sale, transfer, lease, encumbrance or other disposition of the Collateral shall be deposited into an account maintained by the Trustee for the Estate in a depository approved by the United States Trustee for this region. |
| Sharing Arrangement (¶6(i) & (ii)) | The Secured Parties agree to carve-out (the "Carve-Outs") from the Net Proceeds[2] of their Collateral the following, which shall be held by the Trustee free and clear of the Pre-Petition Lien and Adequate Protection Lien: <br><br> (a) Administrative Carve-Out. An amount sufficient to fund the administrative expenses of the Chapter 7 Case, including allowed professional fees, as per the Budget, which may be amended by agreement based on the circumstances of the case (the "Administrative Carve-Out").[3] Any expense or fee claimed to be within the Administrative Carve-Out shall be subject to reasonableness objections. The Administrative Carve-Out shall not be used to prosecute any Challenge(s); provided that up to $25,000, of the Administrative Carve-Out may be used to investigate any Challenge(s). <br><br> (b) Distribution Carve-Out. Provided that and conditioned upon no Challenge having been made by the Trustee with respect to the Pre-Petition Lien and/or the Pre-Petition Secured Liabilities prior to the expiration of the Challenge Period, a carve-out from Net Proceeds of Collateral (the "Distribution Carve-Out") to be used to fund distributions in accordance with section 726 of the Bankruptcy Code. The Distribution Carve-Out, to the extent necessary, shall be used to satisfy any administrative expenses not included in the Administrative Carve-Out before such funds may be available for distribution to unsecured creditors. Further, the Secured Parties shall not be entitled to assert any deficiency claim against the Distribution Carve-Out. |

---

[2] As used herein, "Net Proceeds" shall mean the gross proceeds of Collateral received by the Trustee less any costs or expenses not otherwise reflected in the Administrative Carve-Out, including, but not limited to, royalty payments, storage fees, transportation fees, third party logistic fees and legal fees or expenses not included in the Budget. It being the intention of the parties that such costs and expenses (i) shall be subject to advance review (whenever reasonably practical) and reconciliation with the First Lien Agent and (ii) shall be paid or subtracted from the gross proceeds before the Carve-Out amounts are calculated.

[3] It is understood by and among the parties that the Budget is a best estimate given the facts and circumstances currently known by the professionals. In the event that the facts and circumstances change, the parties shall negotiate in good faith to amend the Budget to include any additional reasonable fees and expenses that the facts and circumstances warrant.

| | |
|---|---|
| Funding of Carve-Outs (¶6(iii)) | The Carve-Outs shall be funded as follows:<br><br>First, $250,000, from cash in the Debtor's bank accounts at Wells Fargo Bank, N.A. to fund a portion of the Administrative Carve-Out.  The balance of such bank accounts (approximately $717,822.68)[4] shall be paid over by the Trustee to the Agent on account of the Pre-Petition Secured Liabilities upon (or as soon as reasonably practical after) entry of the Cash Collateral Order;<br><br>Second, from 5% of the of the Net Proceeds of Collateral until such time as the Trustee has collected or otherwise received Net Proceeds of $2.5 Million (exclusive of any cash turned over to the Trustee from the Debtor's bank accounts at Wells Fargo Bank, N.A.) to fund the Distribution Carve-Out;<br><br>Third, once the Trustee has collected or otherwise received Net Proceeds equal to $2.5 million as set forth above, from 100% of the Net Proceeds of Collateral collected or otherwise received by the Trustee until such time as the Administrative Carve-Out is fully funded in the amount set forth in the Budget;<br><br>Fourth, once the Administrative Carve-Out is fully funded in the amount set forth in the Budget, from 10% of the Net Proceeds of the Collateral collected or otherwise received by the Trustee until the Pre-Petition Secured Liabilities in the amount of $4,703,521.23 are satisfied in full;<br><br>Fifth, once the Pre-Petition Secured Liabilities are satisfied in full, from 50% of the Net Proceeds of the Collateral collected or otherwise received by the Trustee until all post-petition interest (at the non-default rate) accrued on the Pre-Petition Secured Liabilities, and any reasonable, documented attorneys' fees of the Agent are satisfied in full.[5] |
| Satisfaction of the Pre-Petition Secured Liabilities (¶7) | Until the Pre-Petition Secured Liabilities are indefeasibly paid or otherwise satisfied in full (inclusive of post-petition interest accrued at the non-default rate), on a quarterly basis, the Trustee shall pay, by wire transfer or check, to Agent, on behalf the Secured Parties, the aggregate amount of all Net Proceeds of Collateral after deducting the share of such Net Proceeds to be contributed to the Carve-Outs.  Such payment shall be applied to repay the Pre-Petition Secured Liabilities in such order as the Secured Parties may determine in their reasonable discretion.  For the avoidance of doubt, any payments on account of the Pre-Petition Secured Liabilities from any other source, such as a co-obligor or guarantor under the Loan Documents, shall likewise be applied to repay the Pre-Petition Secured Liabilities. |

---

[4] This number is based upon the May 26, 2017 closing ledger account balances of $967,822.68 for accounts ending 7520 and 0201.

[5] Counsel for the First Lien Agent shall submit copies of invoices evidencing its attorneys' fees to the Chapter 7 Trustee and the Office of the United States Trustee (the "Notice Parties").  Upon receipt of an invoice, the Notice Parties shall have ten (10) days to object to the reasonableness of any fees.  Any objections not resolved by the parties shall be decided by the Bankruptcy Court.

| Challenge Period and Release of Challenges (¶¶G,8) | The Trustee and any other parties in interest have seventy-five (75) days from entry of the Cash Collateral Order (the "Challenge Period") to investigate and object to: (a) validity, extent, perfection or priority of the Pre-Petition Lien and/or (b) the validity, allowability, priority, status or amount of the Pre-Petition Secured Liabilities (collectively, such actions in clauses (a) and (b) being a "Challenge"). |
|---|---|
| | Only those parties in interest who properly commence a Challenge within the Challenge Period may prosecute such Challenge.  As to (x) any parties in interest who fail to file a Challenge within the Challenge Period, or if any such Challenge is filed and overruled, or (y) any and all matters that are not expressly the subject of a timely Challenge: (1) any and all such Challenges by any party (including, without limitation, any examiner or any other estate representative appointed in the Chapter 7 Case), shall be forever waived and barred and (2) all of the findings, stipulations, waivers, releases, affirmations, and other stipulations in the Cash Collateral Order as to the priority, extent, and validity as to the Pre-Petition Secured Liabilities and the Pre-Petition Lien shall be of full force and effect and forever binding upon the Estate and all creditors, interest holders, and other parties in interest in the Chapter 7 Case. |
| | For the avoidance of doubt, nothing in the Cash Collateral Order vests or confers on any person (as defined in the Bankruptcy Code), standing or authority to pursue any cause of action belonging to the Estate, including, without limitation, any Challenge with respect to the Pre-Petition Secured Liabilities and the Pre-Petition Lien. |

12.     Other than set forth above, the Cash Collateral Order does not contain any other provisions required to be highlighted by Local Rule 4001-2.

### RELIEF REQUESTED

13.     By this Motion, the Trustee seeks entry of the Cash Collateral Order: (a) authorizing the Trustee to use Cash Collateral, subject to the terms and conditions set forth therein; (b) granting adequate protection to the Secured Parties; (c) modifying the automatic stay; (d) approving the Sharing Arrangement, and (e) granting related relief.

### BASIS FOR RELIEF REQUESTED

14.     The Trustee requires access to Cash Collateral in order to administer and preserve the value of the Debtor's Estate and to liquidate the Collateral and maximize a return for all creditors.  The inability to use Cash Collateral would irreparably harm the Debtor's Estate and its

creditors.  The provisions of the Cash Collateral Order, including the Sharing Arrangement are in the best interests of the Debtor's Estate and creditors and should be approved.

## I.    The Trustee's Request to Use Cash Collateral is Authorized under Section 363 of the Bankruptcy Code and Should be Granted

15.    The Trustee's use of Cash Collateral, is governed by section 363 of the Bankruptcy Code.  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents, or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).  In addition, section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used ... or proposed to be used ... by the trustee, the court... shall prohibit or condition such use... as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).

16.    Here, use of Cash Collateral is appropriate.  First, _the Secured Parties have consented to the use of Cash Collateral on the terms set forth in the Cash Collateral Order_.  Therefore, use of Cash Collateral is appropriate pursuant to section 363(c)(2)(A) of the Bankruptcy Code.    Moreover, the Trustee has proposed appropriate forms of adequate protection.

17.    Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a trustee uses cash collateral.  Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay.  _See In re Cont'l Airlines_, 91 F.3d 553, 556 (3d Cir. 1996).  While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis.  _Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re_

*Swedeland Dev. Grp., Inc.*), 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006), *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy ¶ 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable consideration arising from particular facts of each proceeding"); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact-specific inquiry…left to the vagaries of each case….") (citation and quotation omitted).

18.    The concept of adequate protection is designed to shield a secured creditor from diminution in value of its interest in collateral during the period of debtor's use.  *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180-181 (Bankr. D. Del. 1993) (holding that adequate protection for use of cash collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value).

19.    The Trustee respectfully submits that the proposed adequate protection in the form of the Adequate Protection Lien is appropriate and sufficient under the circumstances. Indeed, the terms and conditions on which the Trustee may use Cash Collateral have been carefully designed to meet the dual goals of sections 361 and 363 of the Bankruptcy Code. If the Cash Collateral Order is entered, the Trustee will have access to funds to administer this chapter

7 case, and thereby provide an opportunity to maximize value for the benefit of all stakeholders. At the same time, the Secured Parties will be adequately protected in a manner that they have negotiated in exchange for consenting to the use of Cash Collateral.

## II.     The Sharing Arrangement Should Be Approved

20.     The Sharing Arrangement described above is an essential and integral provision of the Cash Collateral Order.  By virtue of the Sharing Arrangement, the Secured Parties have agreed to carve-out from the proceeds of their Collateral the Administrative Carve-Out and  the Distribution Carve-Out  –  both of which shall be held by the Trustee free and clear of the Pre-Petition Lien and the Adequate Protection Lien.   The Sharing Agreement provides essential benefits to the Debtor's Estate and should be approved under section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.

21.     Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

22.     In addition, Bankruptcy Rule 9019 provides, in relevant part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

23.     In determining whether to approve a compromise pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, a bankruptcy court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998).   The court's obligation is "to canvas the issues

and see whether the settlement 'falls below the lowest point in a range of reasonableness.'" 10 Collier on Bankruptcy, ¶ 9019.2, 9019-4 (15th ed.) (quoting *In re Drexel Lambert Group, Inc.*, 134 B.R. 493 (Bankr. S.D.N.Y. 1991)); *see also In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983).

24.    Here, this standard is easily met given the substantial benefits the Debtor's Estate will receive from the Sharing Arrangement. <u>First</u>, The Administrative Carve-Out will provide the Trustee with unencumbered cash to fund the administrative expenses of this case. <u>Second</u>, the Distribution Carve-Out provides a mechanism for a distribution to junior creditors. Importantly, any unsecured deficiency claims of the Secured Parties will not share in the Distribution Carve-Out. For these reasons, the Trustee submits that the Sharing Agreement is in the best interests of the Debtor's Estate and should be approved.

## WAIVER OF BANKRUPTCY RULE 6004(h)

25.    To the extent applicable, the Trustee requests that the Court waive the 14-day stay period under Bankruptcy Rule 6004(h) or any similar rule. Given the Trustee's need to access Cash Collateral, waiver of the stay is appropriate under the circumstances.

## NOTICE

26.    Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel if known: (i) the Office of the United States Trustee; (ii) upon all parties who have requested notice pursuant to Federal Rules of Bankruptcy Procedure Rule 2002; (iii) counsel to the Agent; and (iv) any other parties known by the Trustee to assert secured claims with respect to or any interest in the Collateral. The Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

27.    No prior request for the relief sought in this Motion has been made to this Court or any other Court.

WHEREFORE, for the reasons stated herein, the Trustee respectfully requests that the Court grant the relief requested in the Motion, enter the Cash Collateral Order, and grant such other and further relief as the Court deems just and proper.

Dated:  June 2, 2017

By:  /s/ Alan M. Root
    Alan M. Root (5427)
    ARCHER & GREINER, P.C.
    300 Delaware Avenue, Suite 1100
    Wilmington, DE   19801
    Telephone:  302-777-4350
    Facsimile:  302-777-4352
    Email:  aroot@archerlaw.com

    *Attorneys for Chapter 7 Trustee*

212646815v2