**EXHIBIT 1**

ASSET PURCHASE AGREEMENT

by and between

David W. Carickhoff, solely as chapter 7 trustee of the
BANKRUPTCY ESTATE OF MAD CATZ, INC.

and

DEVICE EXPERT INC., as Buyer

Dated as of June 19, 2017

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement"), dated as of June 19, 2017 (the "Effective Date"), is made by and between DAVID W. CARICKHOFF, solely as chapter 7 trustee of estate of Mad Catz, Inc.., Debtor under Case No. 17-10679 (KG) (the "Seller" or "Trustee"), and Device Expert Inc., a corporation formed under the International Companies Act of Samoa ("Buyer"). Capitalized terms used in this Agreement are defined or cross-referenced in Article 10.

## *BACKGROUND INFORMATION*

A.       Mad Catz, Inc. (the "Debtor") commenced a voluntary bankruptcy case under chapter 7 of title of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on March 30, 2017 (the "Petition Date"). Thereafter, the Trustee was appointed as the chapter 7 trustee of the Debtor.

B.       Prior to the Petition Date, the Debtor was a global provider of interactive entertainment products, primarily in the gaming industry. The Debtor's products were catered to gamers across multiple platforms including in-home gaming consoles, handheld gaming consoles, computers, smart phones, tablets and other smart devices (collectively, the "Business").

C.       Buyer desires to purchase the Acquired Assets (as defined below) from Seller, and Seller desires to sell, convey, assign and transfer to Buyer, the Acquired Assets, all in the manner and subject to the terms and conditions set forth in this Agreement and in accordance with §§ 105 and 363 and other applicable provisions of the Bankruptcy Code.

D.       The Acquired Assets are assets of the Debtor's bankruptcy estate ("Estate"), which are to be purchased and assumed by Buyer pursuant to an order of the Bankruptcy Court approving such sale pursuant to §§ 105, 363 and 365 of the Bankruptcy Code in a form reasonably acceptable to Buyer and Seller (the "Sale Order"), all in the manner and subject to the terms and conditions set forth in this Agreement, the Sale Order, and in accordance with other applicable provisions of the Bankruptcy Code.

E.       The execution and delivery of this Agreement and Seller's ability to consummate the transactions set forth in this Agreement are subject, among other things, to the entry of the Sale Order.

NOW,  THEREFORE,  in  consideration  of  the  foregoing  and  their  respective representations, warranties, covenants and agreements herein contained, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

ARTICLE 1.   PURCHASE AND SALE OF THE ACQUIRED ASSETS.

Section 1.1.    Transfer of Acquired Assets.  At the Closing, and upon the terms and conditions herein set forth, Seller shall sell to Buyer, and Buyer shall acquire from Seller, all of

Estate's right, title and interest in, to and under the following property, free and clear of all Liens (the "Acquired Assets").

(a)    all Intellectual Property Rights of the Seller including without limitation all Intellectual Property Rights related to or arising from the trademarks, patents, copyrights and domain names listed on Schedule 1.1(a); and

(b)    all goodwill and other intangible assets associated with the Intellectual Property Rights described in subsection (a) above.

Section 1.2.    Excluded Assets.    Any assets owned by the Estate which are not specifically identified above as being part of the Acquired Assets are deemed to be "Excluded Assets", including but not limited to (i) cash; (ii) deposits; (iii) accounts receivable; (iv) insurance; (v) rights in insurance; (vi) avoidance actions; and (vii) other Estate causes of action.

Section 1.3.    No Assumption of Liabilities.    Buyer shall not assume any Liabilities or obligations of Seller of any kind and all Liabilities and obligations of Seller shall at all times remain the responsibility of the Estate.

## ARTICLE 2.    CONSIDERATION

Section 2.1.    Consideration.    The aggregate consideration for the sale and transfer of the Acquired Assets is $510,000 US Dollars in cash (the "Purchase Price"), which price shall be payable and deliverable in accordance with Section 3.3.

Section 2.2.    Deposit.    Concurrently with the execution and delivery of this Agreement, Buyer shall pay to Seller an amount equal to $14,100 as a deposit (the "Deposit"). If this Agreement is terminated without the Closing occurring, the Deposit shall be disbursed in accordance with Section 8.1(f). If the Closing occurs, the Deposit shall be applied (without interest) towards the Purchase Price.

Section 2.3.    363 Sale.    The Seller will promptly seek approval and entry of the Sale Order pursuant to the motion filed by Seller under Section 363 of the Bankruptcy Code (the "Sale Motion").

## ARTICLE 3.    CLOSING AND DELIVERIES

Section 3.1.    Closing.    The consummation of the transactions contemplated hereby (the "Closing") shall take place within seven (7) days after entry of the Sale Order (conditioned upon the Bankruptcy Court making a finding under Fed. R. Bankr. P 6004(h)) and if not, then on the first Business Day following the date on which the Sale Order becomes a final and non-appealable order) (the "Closing Date"), at a place as agreed to by the parties.

Section 3.2.    Seller's Deliveries.    At the Closing, the sale, transfer, assignment and delivery by Seller of the Debtor's rights, title and interests the Acquired Assets to Buyer, as herein provided, shall be free and clear of all liens, claims and encumbrances and shall be effected on the Closing Date by bills of sale, endorsements, assignments and other instruments of transfer and conveyance, as well as the electronic transfer of all files and records of Seller relating to the

2

Acquired Assets excluding any representations, warranties or covenants (other than those expressly set forth herein) and shall otherwise be consistent with the terms of this Agreement reasonably satisfactory in form and substance to counsel for Buyer.

Section 3.3.    Buyer's Deliveries.  At the Closing:

(a)    Buyer shall pay to Seller the Purchase Price (less the amount of the Deposit) by wire transfer of immediately available funds in accordance with instructions provided by the Seller;

## ARTICLE 4.  REPRESENTATIONS AND WARRANTIES

Section 4.1.    Representations and Warranties of Seller.  Seller represents and warrants to Buyer as follows:

(a)    Corporate Organization.  Debtor is in a chapter 7 proceeding in the Bankruptcy Court.  Subject to any necessary authority from the Bankruptcy Court, Seller has all requisite power and authority to consummate the transactions contemplated hereby and to sell, transfer and convey to Buyer all of the Debtor's right, title and interest in the Acquired Assets free and clear of any Liens.

(b)    Authorization and Validity.  Seller has all requisite power and authority to enter into this Agreement and, subject to the Bankruptcy Court's entry of the Sale Order, to carry out his obligations hereunder and to sell, transfer and convey to Buyer all of the Debtor's right, title, and interest in the Acquired Assets free and clear of any Liens.  This Agreement has been duly executed by Seller and, subject to the Bankruptcy Court's entry of the Sale Order, constitutes valid and binding obligations, enforceable against the Estate in accordance with its terms.

(c)    Litigation.  Except as disclosed on the Debtor's Statement of Financial Affairs (SOFA), to the best of Seller's knowledge, the Seller is not aware of any claims, actions, suits, proceedings or investigations pending or threatened concerning the Acquired Assets.

(d)    Disclaimer of other Representations and Warranties.  The Seller makes no representation or warranty, express or implied, at law or in equity, regarding the Acquired Assets or any assets, liabilities or operations, including, without limitation, with respect to capacity, condition, design, fitness for any particular purpose, merchantability, operation or quality, and any such other representations or warranties are hereby expressly disclaimed.  Seller expressly disclaims any representation or warranty, express, statutory, or implied, as to: (i) the content, character, or nature of any descriptive memorandum, report, brochure, chart, or statement prepared by the Seller, the Debtor or third parties and relating to the Debtor or the Acquired Assets; (ii) any estimates of the value of the Acquired Assets, or future revenues generated by the Acquired Assets; (iii) the condition, quality, suitability, prior use, or design of the Acquired Assets; (iv) the merchantability or fitness for a particular purpose of the Acquired Assets; (v) the validity, enforceability, restriction-free nature, or transferability of any trademarks, copyrights, patents, domain names, or any other Intellectual Property Rights used by the Debtor in the Business, including, but not limited to, any software used in the Business; (vi) the rights any licensee may have under 11 U.S.C. § 365(n); or (vii) any other materials or information that may have been made available or communicated to Buyer or its Affiliates, or their employees, agents, consultants,

3

representatives, or advisors in connection with the transactions contemplated by this Agreement or any discussion or presentation relating thereto. BUYER HEREBY ACKNOWLEDGES AND AGREES THAT SELLER MAKES NO REPRESENTATION OR WARRANTY THAT THE BUSINESS DOES NOT DO ANY OF DEBTOR'S PATENTS, COPYRIGHTS, TRADE SECRETS, DOMAIN NAMES, TRADEMARKS, OR OTHER INTELLECTUAL PROPERTY RIGHTS OF DEBTOR, INCLUDING, BUT NOT LIMITED TO, ANY SOFTWARE USED IN THE BUSINESS, VIOLATE OR INFRINGE ANY THIRD PARTY INTELLECTUAL PROPERTY RIGHT, WHETHER SOUNDING IN PATENT, COPYRIGHT, TRADE SECRET OR TRADEMARK, WHETHER KNOWN OR UNKNOWN TO SELLER. BUYER HEREBY ACKNOWLEDGES AND AGREES THAT BUYER IS PURCHASING THE ACQUIRED ASSETS ON AN "AS-IS, WHERE-IS" BASIS AND "WITH ALL FAULTS." WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE SELLER MAKES NO REPRESENTATION OR WARRANTY REGARDING ANY ASSETS INCLUDING THE ACQUIRED ASSETS, AND NONE SHALL BE IMPLIED AT LAW OR IN EQUITY.

Section 4.2.    Representations and Warranties of Buyer. Buyer hereby represents and warrants to Seller as follows:

(a)    Corporate Organization.    Buyer is a corporation formed under the International Companies Act of Samoa and is validly existing and in good standing under the laws of Samoa, and has all requisite corporate power and authority to own its properties and assets.

(b)    Authorization and Validity of Agreement. Buyer has all requisite corporate power and authority to enter into this Agreement and to carry out its obligations hereunder. The execution and delivery of this Agreement and the performance of Buyer's obligations hereunder have been duly authorized by all necessary corporate action by the board of directors of Buyer, and no other corporate action on the part of Buyer is necessary to authorize such execution, delivery and performance. This Agreement has been or will be duly executed by Buyer and constitutes, or will when executed constitute, its valid and binding obligation, enforceable against it in accordance with its terms.

(c)    No Conflict or Violation.    The execution, delivery and performance by Buyer of this Agreement does not and will not violate or conflict with any provision of the certificate of incorporation or by-laws of Buyer and does not and will not violate any provision of law, or any order applicable to Buyer, nor will it result in a breach of or constitute (with due notice or lapse of time or both) a default under any contract to which Buyer is a party or by which it is bound or to which any of its properties or assets is subject.

(d)    Consents and Approvals.    The execution, delivery and performance of this Agreement by Buyer does not and will not require the consent or approval of, or filing with, any government or any other Person except (i) as may be required to be obtained by Buyer after the Closing in order to own or operate any of the Acquired Assets; (ii) for entry of the Sale Order by the Bankruptcy Court; or (iii) for such consents, approvals and filings, of which the failure to obtain or make would not, individually or in the aggregate, have a Material Adverse Effect on the ability of Buyer to consummate the transactions contemplated hereby.

4

(e)    <u>Investigation by Buyer</u>. Buyer has conducted its own independent review and analysis of the Acquired Assets. Buyer has conducted its own independent review of all Orders of, and all motions, pleadings, and other submissions to, the Bankruptcy Court in connection with Bankruptcy Case. In entering into this Agreement, Buyer has relied solely upon its own investigation and analysis, and Buyer (i) acknowledges that neither Seller nor any of its Affiliates or Related Persons makes or has made any representation or warranty, either express or implied, as to the accuracy or completeness of any of the information provided or made available to Buyer or its Affiliates or Related Persons, except for the representations and warranties contained in Section 4.1 (which are subject to the limitations and restrictions contained in this Agreement); and (ii) agrees, to the fullest extent permitted by law, that none of Seller, its Affiliates or any of their respective Related Persons shall have any liability or responsibility whatsoever to Buyer or its Affiliates or Related Persons on any basis (including, without limitation, in contract or tort, under federal or state securities laws or otherwise) based upon any information provided or made available, or statements made, to Buyer or its Affiliates or Related Persons (or any omissions therefrom), including, without limitation, in respect of the specific representations and warranties of Seller set forth in this Agreement, except, with regard to Seller, for the representations and warranties contained in Section 4.1 and, with respect to such representations and warranties, subject to the limitations and restrictions contained in this Agreement.

Section 4.3.    <u>Warranties Exclusive</u>.    The parties acknowledge that the representations and warranties contained in Article 4 are the only representations or warranties given by the parties and that all other express or implied warranties are disclaimed. Without limiting the foregoing Buyer acknowledges that the Acquired Assets are conveyed "AS IS", "WHERE IS" and "WITH ALL FAULTS" and that ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE DISCLAIMED. WITHOUT LIMITING THE FOREGOING THE BUYER ACKNOWLEDGES THAT SELLER AND SELLER'S AFFILIATES AND THEIR RESPECTIVE RELATED PERSONS HAVE MADE NO REPRESENTATION OR WARRANTY CONCERNING (I) ANY USE TO WHICH THE ACQUIRED ASSETS MAY BE PUT, (II) ANY FUTURE REVENUES, COSTS, EXPENDITURES, CASH FLOW, RESULTS OF OPERATIONS, FINANCIAL CONDITION OR PROSPECTS THAT MAY RESULT FROM THE OWNERSHIP, USE OR SALE OF THE ACQUIRED ASSETS, (III) ANY OF DEBTOR'S PATENTS, COPYRIGHTS, TRADE SECRETS, DOMAIN NAMES, TRADEMARKS, OR OTHER INTELLECTUAL PROPERTY RIGHTS OF DEBTOR, INCLUDING, BUT NOT LIMITED TO, ANY SOFTWARE USED IN THE BUSINESS, (IV) ANY OTHER INFORMATION OR DOCUMENTS MADE AVAILABLE TO BUYER OR ITS AFFILIATES OR RELATED PERSONS OR (V) EXCEPT AS EXPRESSLY SET FORTH IN SECTION 4.1, THE CONDITION OF THE ACQUIRED ASSETS INCLUDING, WITHOUT LIMITATION, COMPLIANCE WITH ANY FEDERAL TRADE COMMISSION LAWS OR OTHER LAWS.

Section 4.4.    <u>Survival of Representations and Warranties</u>.    None of the representations or warranties of Buyer or Seller set forth in this Agreement or in any certificate delivered pursuant to <u>Section 7.2(a)</u> shall survive the Closing.

5

ARTICLE 5.  <u>COVENANTS AND OTHER AGREEMENTS.</u>

Section 5.1.  <u>Covenants of Seller</u>.  At the request and the sole expense of Buyer, at any time after the Closing Date, Seller shall promptly execute and deliver such documents, and take other acts, as Buyer or its counsel may reasonably request to effectuate the purposes of this Agreement.

Section 5.2.  <u>Covenants of Buyer</u>.  At the request of Seller, at any time after the Closing Date, Buyer shall promptly execute and deliver such documents as Buyer or its counsel may reasonably request to effectuate the purposes of this Agreement.

Section 5.3.  <u>Bankruptcy Matters</u>.  Seller and Buyer shall use commercially reasonable efforts to cooperate, assist and consult with each other to secure the entry of the Sale Order following the date hereof, and to consummate the transactions contemplated by this Agreement, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Buyer under this Agreement and furnishing any testimony regarding the transactions contemplated hereby.

ARTICLE 6.  <u>CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES.</u>

Section 6.1.  <u>Conditions Precedent to Performance by Seller</u>.  The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to the fulfillment, at or before the Closing Date, of the following conditions; any one or more of which (other than the condition contained in <u>Section 6.1(c)</u>) may be waived by Seller in its sole discretion:

(a)  <u>Representations and Warranties of Buyer</u>.  All representations and warranties made by Buyer in <u>Section 4.2</u> shall be accurate in all material respects on and as of the Closing Date as if again made by Buyer on and as of such date, except for inaccuracies that do not result in a Material Adverse Effect on Buyer's ability to perform its obligations hereunder, and Seller shall have received a certificate, dated the Closing Date and signed by the president, or equivalent, of Buyer, to that effect.

(b)  <u>Performance of the Obligations of Buyer</u>.  Buyer shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Closing Date.

(c)  <u>Consents and Approvals</u>. The Bankruptcy Court shall have entered the Sale Order, in form and substance reasonably satisfactory to Seller, and no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date.

(d)  <u>No Violation of Orders</u>.  No preliminary or permanent injunction or other order that declares this Agreement invalid or unenforceable in any respect or which prevents the consummation of the transactions contemplated hereby shall be in effect.

Section 6.2.  <u>Conditions Precedent to the Performance by Buyer</u>. The obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to the

6

fulfillment, at or before the Closing Date, of the following conditions, any one or more of which (other than the condition contained in Section 6.2(c)) may be waived by Buyer in its sole discretion:

(a)   Representations and Warranties of Seller.   All representations and warranties made by Seller in Section 4.1 shall be accurate in all material respects on and as of the Closing Date as if again made by Buyer on and as of such date.

(b)   Performance of the Obligations of Seller.  Seller shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Closing Date.

(c)   Consents and Approvals. The Bankruptcy Court shall have entered the Sale Order and no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date and such Sale Order shall approve the sale and transfer to Buyer of the Acquired Assets upon the terms provided in this Agreement free and clear of any Liens.

(d)   No Violation of Orders.  No preliminary or permanent injunction or other order that declares this Agreement invalid in any respect or prevents the consummation of the transactions contemplated hereby shall be in effect.

## ARTICLE 7.   TERMINATION

Section 7.1.   Termination:  This Agreement may be terminated at any time prior to the Closing Date:

(a)   By either Seller or Buyer if the Closing shall not have occurred by July 15, 2017; provided, however, that such date may be extended by Seller and Buyer upon mutual agreement.

(b)   By either Seller or Buyer upon the entry of an order of the Bankruptcy Court authorizing the sale of the Acquired Assets in a Competing Transaction; provided, however, that Buyer shall not be permitted to terminate this Agreement upon the entry of such an order if Buyer is determined to be the second highest bidder for the Acquired Assets in which case Buyer is required to remain bound by the terms of this Agreement pursuant until the earlier of (1) closing of the Competing Transaction or (2) July 15, 2017.

(c)   By Seller if Buyer shall have breached any of its obligations, representations, warranties, covenants or agreements contained in this Agreement, which breach cannot be or has not been cured within three (3) Business Days after the giving of written notice by Seller to Buyer specifying such breach.

(d)   By Buyer if Seller shall have breached any of its obligations, representations, warranties, covenants or agreements contained in this Agreement, which breach cannot be or has not been cured within three (3) Business Days after the giving of written notice by Buyer to Seller specifying such breach; or

(e)   By the mutual written consent of Seller and Buyer.

CHI1:/2275079v6

(f)    Effect of Termination.  In the event of termination of this Agreement as provided in Section 7.1, this Agreement shall forthwith become void and there shall be no liability on the part of either party; provided, however, that in the event this Agreement is terminated pursuant to Section 7.1 (c) and Seller is not then in breach of Seller's obligations hereunder, then Seller shall be entitled to retain the Deposit and all interest thereon as liquidated damages and as its sole and exclusive remedy.  In the event of termination of this Agreement for any reason other than pursuant to Section 7.1(c), and provided that Buyer is not then in breach of Buyer's obligations hereunder, Buyer shall be entitled to return of the Deposit, without any interest thereon. The return of the Deposit by Seller shall be the Buyer's sole remedy in the event of a breach of Seller's obligations hereunder.

## ARTICLE 8.  MISCELLANEOUS.

Section 8.1.    Successors and Assigns.  Except as otherwise provided in this Agreement, no party hereto shall assign this Agreement or any rights or obligations hereunder without the prior written consent of the other party hereto, and any such attempted assignment without such prior written consent shall be void and of no force and effect.  This Agreement shall inure to the benefit of and shall be binding upon the successors and permitted assigns of the parties hereto.

Section 8.2.    Governing Law; Jurisdiction.  This Agreement shall be construed, performed and enforced in accordance with, and governed by, the laws of the United States of America and the State of Delaware (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by the Bankruptcy Code. The parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court.

Section 8.3.    Expenses.  Each of the parties hereto shall pay its own expenses in connection with this Agreement and the transactions contemplated hereby, including, without limitation, any legal and accounting fees, whether or not the transactions contemplated hereby are consummated.  Buyer shall pay any fees, costs, and expenses associated with recording the assignment of any of the Acquired Assets.

Section 8.4.    Broker's and Finder's Fees.  Each of the parties represents and warrants that it has dealt with no broker or finder in connection with any of the transactions contemplated by this Agreement and, insofar as such party knows, no broker or other Person is entitled to any commission or finder's fee in connection with any of these transactions.

Section 8.5.    Severability.  In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void or unenforceable, said provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect only if, after excluding the portion deemed to be unenforceable, the remaining terms shall provide for the consummation of the transactions contemplated hereby in substantially the same manner as originally set forth at the later of the date this Agreement was executed or last amended.

Section 8.6.    Notices.

(a)    All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (i) on the date of service, if served personally on the party to whom notice is to be given; (ii) on the day after delivery to Federal Express or similar overnight courier or the next day Express Mail service maintained by the United States Postal Service; or (iii) on the third day after mailing, if mailed to the party to whom notice is to be given, by first class mail, certified, postage prepaid and properly addressed, to the party as follows:

If to Seller:

> David W. Carickhoff
> 300 Delaware Avenue, Suite 1100
> Wilmington, DE  19801
> Attention:  David Carickhoff, Esq.
> Email: dcarickhoff@archerlaw.com

Additional copy to:

> Archer & Greiner, P.C.
> 300 Delaware Avenue, Suite 1100
> Wilmington, DE  19801
> Attention:  Alan M. Root, Esq.
> Email: aroot@archerlaw.com

If to Buyer : Device Expert Inc.

> 14F-8, No 258, Lian Cheung Rd, Zhonghe Dist.
> New Taipei City, Taiwan, R.O.C.
> Attention: Mr. Ho-Lung Lu
> Email: paul@mail.dexin.com.tw

Additional copy to:

> Aaron Smith, Esq.
> Locke Lord, LLP
> 111 S. Wacker Drive
> Chicago, Illinois 60606
> Email: asmith@lockelord.com

(b)    Any party may change its address for the purpose of this Section 9.6 by giving the other party written notice of its new address in the manner set forth above.

Section 8.7.    Amendments; Waivers.  This Agreement may be amended or modified, and any of the terms, covenants, representations, warranties or conditions hereof may be waived, only by a written instrument executed by the parties hereto, or in the case of a waiver, by

CHI1://2275079v6

the party waiving compliance. Any waiver by any party of any condition, or of the breach of any provision, term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall not be deemed to be or construed as a furthering or continuing waiver of any such condition, or of the breach of any other provision, term, covenant, representation or warranty of this Agreement.

Section 8.8.   Public Announcements.  Except for any description of the Sale in any motion or document filed with the Bankruptcy Court, no party shall make any press release or public announcement concerning the transactions contemplated by this Agreement without the prior written approval of the other Party.  The Parties acknowledge that Seller shall file this Agreement with the Bankruptcy Court in connection with obtaining the Sale Order and may file and serve other related notices regarding this Agreement as Seller deems appropriate.

Section 8.9.   Entire Agreement.   This Agreement contains the entire understanding between the parties hereto with respect to the transactions contemplated hereby and supersede and replace all prior and contemporaneous agreements and understandings, oral or written, with regard to such transactions. All schedules hereto and any documents and instruments delivered pursuant to any provision hereof are expressly made a part of this Agreement as fully as though completely set forth herein.

Section 8.10.   Parties in Interest.  Nothing in this Agreement is intended to or shall confer any rights or remedies under or by reason of this Agreement on any Persons other than Seller and Buyer and their respective successors and permitted assigns. Nothing in this Agreement is intended to or shall relieve or discharge the obligations or liability of any third Persons to Seller or Buyer.  This Agreement is not intended to nor shall give any third Persons any right of subrogation or action over or against Seller or Buyer.

Section 8.11.   Headings, Interpretation, Gender.  Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context requires.  Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed followed by the words "without limitation." Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Buyer or Seller, whether under any rule of construction or otherwise. No party to this Agreement shall be considered the draftsman. On the contrary, this Agreement has been reviewed, negotiated and accepted by all parties and their attorneys and shall be construed and interpreted according to the ordinary meaning of the words so as fairly to accomplish the purposes and intentions of all the parties. The table of contents and the captions and section headings contained in this Agreement are for convenience of reference only, do not form a part of this Agreement and shall not affect in any way the meaning or interpretation of this Agreement. All references in this Agreement to "Section" or "Article" shall be deemed to be references to a Section or Article of this Agreement.   All references to "herein" or "hereof" or "hereunder" and similar phrases shall be broadly construed to refer to the entire Agreement and not merely to the specific clause, section, or article.

Section 8.12.   Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic

CHI1://2275079v6

transmission shall be deemed to have the same legal effect as delivery of an original executed counterpart of this Agreement.

## ARTICLE 9.   DEFINITIONS.

Section 9.1.    Certain Terms Defined.  As used in this Agreement, the following terms have the following meanings:

"Affiliate" means, with respect to any Person, any Person directly or indirectly controlling, controlled by or under direct or indirect common control with such other Person.

"Business Day" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in Wilmington, Delaware are authorized by law or other governmental action to close.

"Intellectual Property Rights" means any and all intellectual property rights of whatever nature and in whatever form including rights in all inventions, patents, trademarks, service marks, registered designs, copyrights, domain names, pending applications for any of the foregoing, trade and business names, brand names, unregistered trademarks and service marks, unregistered designs and rights in designs, trade dress, trade secret, formula, copyrights, database rights and rights in software, moral rights, performers rights, know-how, other intellectual property rights including all permits, and all other similar or equivalent industrial, intellectual or commercial rights or property subsisting under the laws of each and every jurisdiction throughout the world whether registered or not, and whether vested, contingent or future, and all divisions, continuations, continuations-in-part, substitutes, reversions, renewals and extensions of any of the foregoing, and all rights under permits, laws or otherwise in relation to any of the foregoing, as well as the rights to sue for past, present, and future infringement of any and all such intellectual property rights.

"Liabilities" means all debts, losses, damages, adverse claims, fines, penalties, liabilities or obligations (whether direct or indirect, known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, and whether in contract, tort, strict liability or otherwise), and including all costs and expenses relating thereto.

"Liens" means mortgages, pledges, security interests, encumbrances, liens (statutory or other), conditional sale agreements, pledges, claims, licenses, charges, options, right of first refusal, transfer restriction encumbrance or any other restriction or limitation of any kind.

"Person" means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government.

"Related Person" means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, investment bankers or representatives of any such Person.

[Signatures are on the following page.]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

DEVICE EXPERT INC.

By: _____
Name:  Ho-Lung Lu
Title:

CHAPTER 7 TRUSTEE, Seller

By: _____
Name: David W. Carickhoff
Title: Chapter 7 Trustee of the bankruptcy estate of
Mad Catz, Inc..

CHI1:/:2275079v6

Schedule 1.1(a)
Acquired Assets

**PATENTS**

| Country | Description | Registration # | Registration Date |
|---------|-------------|----------------|-------------------|
| France | Analog Steering Wheel for Video Games | 483 474 to 483 476 | 10/31/1997 |
| France | Adv Control Pad (Design N64 5326) | 97 3852 | 10/31/1997 |
| France | Sports Memory Card Design | 533 440 to 533 456 | 3/19/1999 |
| France | Fishing Pole Accessory for a Computer Game (Design) | 996993 | 4/14/2000 |
| France | Computer Game Accessory (MC2) | 577 664 to 577 670 | 4/14/2000 |
| Germany | Fishing Pole Accessory for a Computer Game (Design) | 4 99 10 486.2 | 1/17/2000 |
| Spain | Computer Game Accessory (MC2) | 146817 | 12/11/2000 |
| Spain | Fishing Pole Accessory for a Computer Game (Design) | 146818 | 12/11/2010 |
| US | System for Adjusting The Response Characteristic of an Electronic Game Input Device (AccuDrive Calibration System) | 6,203,432 | 3/20/2001 |
| US | Light Attachment for Portable Electronic Device (Flip Light Design) | 7,153,212 B1 | 12/26/2006 |
| US | Wearable Personal Sound Delivery Apparatus | 8,452,039 | 5/28/2013 |
| US | Leg extensions for a lap-mounted computer game accessory | 6,290,228 | 9/18/2001 |
| US | Fishing pole accessory for a computer game | D428,064 | 7/11/2000 |
| US | Controller for video games | D415,752 | 10/26/1999 |
| US | Controller for video games | D410,914 | 6/15/1999 |
| US | Dual controller assembly for video games | D409,182 | 5/4/1999 |
| US | Handheld steering wheel for video games | D409,179 | 5/4/1999 |
| US | Memory card for computer video games | D408,803 | 4/27/1999 |
| US | Memory card for computer video games | D408,378 | 4/20/1999 |

CHI1:/2275079v6

| WIPO | Computer Game Accessory Having a Lap-Shaped Contour | WO0067865 | 11/16/2000 |
| WIPO | System for Adjusting the Response Characteristic of an Electronic Game Input Device | WO0067864 | 11/16/2000 |
| WIPO | Fishing Pole Accessory For a Computer Game | WO0067863 | 11/16/2000 |
| WIPO | Leg Extensions for a Lap-Mounted Computer Game Accessory | WO0067866 | 11/16/2000 |
| WIPO | Wearable personal sound delivery apparatus | WO2007130565 | 11/15/2007 |

15

**COPYRIGHTS**

| Country | Description | Copyright # | Date |
|---|---|---|---|
| US | Unpublished technical drawings & text & 2 other titles | V3586D334 | 2010 |
| US | Memory cards for video games: no. 1 | VAu000444016 | 1998 |
| US | Memory card for computer video games: no. 2 | VAu000444015 | 1998 |
| US | GameShark codes (PS2 codes through March 29, 2002) | TX0006030104 | 2001 |
| US | GameShark codes (for PS2 version 1.8) & 2 other titles; GameShark codes | V3494D922 | 2003 |
| US | Memory cards for computer video games no. 1 | V3459D729 | 2000 |
| US | Memory cards for computer video games no. 1 | V3430D069 | 1999 |

CHI1:/:2275079v6

**TRADEMARKS**

| Serial Number | Reg. Number | Word Mark | Live/Dead | Owner | Owner Address |
|---|---|---|---|---|---|
| 78010671 | 2545082 | MAD CATZ | LIVE | MAD CATZ, INC. CORPORATION DELAWARE | 10680 TREENA STREET SUITE 500, SAN DIEGO, CALIFORNIA 92131-2447 |
| 77938245 | 4004392 | TRITTON | LIVE | MAD CATZ, INC. CORPORATION DELAWARE | 10680 TREENA STREET SUITE 500, SAN DIEGO, CALIFORNIA 92131-2447 |
| 77938252 | 3906693 | TT | LIVE | MAD CATZ, INC. CORPORATION DELAWARE | 10680 TREENA STREET SUITE 500, SAN DIEGO, CALIFORNIA 92131-2447 |
| 77763499 | 3986293 | ECLIPSE | LIVE | MAD CATZ, INC. CORPORATION DELAWARE | 10680 TREENA STREET SUITE 500, SAN DIEGO, CALIFORNIA 92131-2447 |
| 77763490 | 3986292 | ECLIPSE | LIVE | MAD CATZ, INC. CORPORATION DELAWARE | 10680 TREENA STREET SUITE 500, SAN DIEGO, CALIFORNIA 92131-2447 |
| 77938780 | | SEE2 | DEAD | MAD CATZ, INC. CORPORATION DELAWARE | 7480 MISSION VALLEY ROAD SUITE 101, SAN DIEGO, CALIFORNIA 92108 |
| 77938772 | | THE ULTIMATE GAMING HEADSET | DEAD | MAD CATZ, INC. CORPORATION DELAWARE | 7480 MISSION VALLEY ROAD SUITE 101, SAN DIEGO, CALIFORNIA 92108 |
| 76129312 | 2782351 | GAMESHARK | LIVE | MAD CATZ, INC. CORPORATION DELAWARE | 10680 TREENA STREET, SUITE 500 SAN DIEGO, CALIFORNIA 92131 |
| 76337306 | | SHARKCAGE | DEAD | MAD CATZ, INC. CORPORATION BY ASSIGNMENT DELAWARE | 7480 MISSION VALLEY ROAD SUITE 101, C/O WHITNEY E. PETERSON SAN DIEGO, CALIFORNIA 92108 |
| 76337305 | | SHARKPHONES | DEAD | MAD CATZ, INC. CORPORATION BY ASSIGNMENT | 7480 MISSION VALLEY ROAD SUITE 101, C/O |

CHI1:\2275079v6

| | | | | DELAWARE | WHITNEY E. PETERSON SAN DIEGO, CALIFORNIA 92108 |
|---|---|---|---|---|---|
| 75529602 | 2337520 | SHARKBYTE | LIVE | MAD CATZ, INC. CORPORATION DELAWARE | 10680 TREENA STREET SUITE 500, SAN DIEGO, CALIFORNIA 92131-2447 |
| 75595335 | 2657539 | DUAL FORCE | LIVE | MAD CATZ, INC. CORPORATION UTAH | 7480 MISSION VALLEY ROAD SUITE 101, SAN DIEGO, CALIFORNIA 92108 |
| 75734460 | | POOL SHARK | DEAD | MAD CATZ, INC. CORPORATION DELAWARE | 7480 MISSION VALLEY ROAD SUITE 101, SAN DIEGO, CALIFORNIA 92108 |
| 75642723 | 2394958 | GAMESHARK PRO | DEAD | MAD CATZ, INC. CORPORATION DELAWARE | 7480 MISSION VALLEY ROAD SUITE 101, SAN DIEGO, CALIFORNIA 92108 |
| 75526274 | 2302938 | HAMMERHEAD | DEAD | MAD CATZ, INC. CORPORATION DELAWARE | 7480 MISSION VALLEY ROAD SUITE 101, SAN DIEGO, CALIFORNIA 92108 |
| 75005635 | 2203092 | GAME SHARK | LIVE | MAD CATZ, INC. CORPORATION DELAWARE | 10680 TREENA STREET SUITE 500, SAN DIEGO, CALIFORNIA 92131-2447 |
| 75319442 | 2180509 | MAD CATZ | LIVE | MAD CATZ, INC. CORPORATION DELAWARE | 10680 TREENA STREET SUITE 500, SAN DIEGO, CALIFORNIA 92131-2447 |
| 75221435 | 2238027 | SHARKPAD PRO | LIVE | MAD CATZ, INC. CORPORATION DELAWARE | 7480 MISSION VALLEY ROAD SUITE 101, SAN DIEGO, CALIFORNIA 92108 |

18

## DOMAIN NAMES

Madcatz.com [registrant = Perfect Privacy, LLC?]
Madcatz.us
Madcatz.com.br
Madcatzjapan.jp
Madcatzstore.com
Teammadcatz.com

TrittonAudio.com
Trittontechnologies.com [registrant = Domains By Proxy, LLC]

Buydamageinc.com
Cyborggaming.com
Cyborggaming.net
Cyborggaming.tv

Damageincthegame.com
Damageincgame.com
Eclipsetouch.com
Eclipsetouch.info
Eclipsetouch.net
Gameshark.net [registrant = Perfect Privacy, LLC?]
Gameshark.tv

Rockband4help.com

CHI1:/:2275079v6