# SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is made by and between David W. Carickhoff, solely in his capacity as the chapter 7 trustee (the "Trustee") of the bankruptcy estate of Mad Catz, Inc. (the "Debtor") and Logitech Europe S.A.; Logitech Inc.; Logitech UK Limited; Logitech Technology (Suzhou) Co. Ltd.; and Logitech Asia Pacific Limited (collectively, "Logitech" and together with the Trustee, the "Parties" and each a "Party").

## RECITALS

A.  On March 30, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Office of the United States Trustee appointed the Trustee to serve as the chapter 7 trustee for the Debtor's bankruptcy estate.

B.  Prior to the Petition Date, the Debtor, along with certain of its affiliates, and Logitech entered into that certain Asset Purchase Agreement dated as of September 15, 2016 (the "APA"). In connection with the APA, the Debtor and Logitech entered into that certain escrow agreement dated as of September 15, 2016 (the "Escrow Agreement"). Pursuant to the APA and the Escrow Agreement, two separate escrows were created as follows to be held by an escrow agent (the "Escrow Agent"):

- One million United States Dollars ($1,000,000) to be held in a general escrow account (the "General Escrow") to satisfy any indemnification claims made by a Buyer Indemnified Party (as that term is defined in the APA) during the Escrow Period (as that term is defined in the APA); and

- One million United States Dollars ($1,000,000) to be held in a separate escrow account to satisfy any indemnification claims made by a Buyer Indemnified Party with respect to the tooling of certain assets purchased by Logitech (the "Tooling Escrow").

C.  Prior to the Petition Date, Logitech timely made certain claims against the Tooling Escrow. The Debtor's deadline to dispute such claims expired, without dispute, prior to the Petition Date. Thereafter, post-petition, the Escrow Agent released the remaining funds in the Tooling Escrow, totaling $473,423.09, to the Trustee on behalf of the Debtor's estate.

D.  On October 9, 2017, the Trustee and Logitech Europe S.A. entered into a stipulation granting limited relief from the automatic stay (the "Stipulation") to Logitech to the extent necessary to present a General Notice of a General Claim (as those terms are defined in the Escrow Agreement) against the General Escrow to the Trustee and the Escrow Agent. On October 10, 2017, the Bankruptcy Court entered an order approving the Stipulation.

E.  The deadline for Logitech to assert claims under the General Escrow expired on or about September 15, 2017. On or about September 13, 2017, Logitech issued a General

**EXECUTION VERSION**

Notice of a General Claim against the General Escrow (the "General Notice") to the Trustee and Escrow Agent. Pursuant to its General Notice, Logitech asserted that it would experience total projected losses in excess of $2.5 million as a result of undisclosed defects in the assets purchased under the APA, and that it was therefore entitled to an indemnification claim against the Debtor and the General Escrow. In its General Notice, Logitech advised that it would not agree to release any portion of the $1 million held in the General Escrow to the Trustee, and demanded that the Escrow Agent release the entire amount held in the General Escrow to Logitech.

F. On or about October 10, 2017, the Trustee timely issued a General Counter Notice (the "General Counter Notice") pursuant to Section 3.2(b) of the Escrow Agreement, by which he objected to the release of any portion of the General Escrow to Logitech. Prior to and after issuing the General Counter Notice, the Trustee had requested documents from Logitech that would support Logitech's claims for indemnification against the General Escrow.

G. Following the issuance of the General Notice and the General Counter Notice, the Trustee and Logitech engaged in good faith, arm's-length negotiations and exchanged documents related to Logitech's claim against the General Escrow. The Trustee and his professionals have reviewed the documents and evaluated Logitech's claim against the General Escrow.

H. Having engaged in good faith, arm's-length negotiations, the Parties have agreed, so as to avoid the cost, risks, and burdens that would be imposed by further litigation, and without admitting any liability, to resolve all issues in connection with the APA, the Escrow Agreement, the General Escrow, the General Notice, the General Counter Notice, and/or any related issues on the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is stipulated and agreed by and between the Parties as follows.

## AGREEMENT

1. Incorporation of Recitals. The foregoing recitals are incorporated herein by reference.

2. Settlement Effective Date. The effective date of this Settlement Agreement shall be the first business day after the order approving this Settlement Agreement becomes final and non-appealable (the "Settlement Effective Date").

3. Release of General Escrow Funds. The Trustee and Logitech each acknowledge and agree that, after payment of the remaining costs, fees, and expenses of the Escrow Agent as may be required under the Escrow Agreement (if any):

    a. 20% of the remaining funds in the General Escrow (including any accrued interest) shall be wired from the General Escrow account to the Trustee, on behalf of the Debtor's estate, in accordance with the wire instructions provided by the Trustee (the "Trustee Escrow Funds"); and

**EXECUTION VERSION**

      b. 80% of the remaining funds in the General Escrow (including any accrued interest) shall be wired from the General Escrow account to Logitech in accordance with wire instructions provided by Logitech (the "<u>Logitech Escrow Funds</u>").

4.   <u>Disbursement Request</u>. The Trustee and Logitech each acknowledge and agree that, subject only to the occurrence of the Settlement Effective Date, this Settlement Agreement shall constitute a Disbursement Request under section 3.2(a) of the Escrow Agreement. The Parties jointly agree and shall instruct the Escrow Agent to disburse the General Escrow Funds in accordance with the terms of this Settlement Agreement within five (5) days of the later of: (i) presentment of a fully executed copy of this Settlement Agreement to the Escrow Agent and (ii) the occurrence of the Settlement Effective Date. If requested by the Escrow Agent, the Parties shall jointly prepare and deliver a Disbursement Request to the Escrow Agreement in the form attached to the Escrow Agreement as Annex I.

5.   <u>Release by the Estate</u>. Upon the Settlement Effective Date and subject to the Trustee's receipt of the Trustee Escrow Funds, the Debtor's estate, the Trustee (solely in such capacity), and their respective current and future estates, predecessors, successors and assigns, hereby conclusively, absolutely, unconditionally, and irrevocably release and forever discharge:

      a. Logitech and its past, current, and future estates, predecessors, successors and assigns from any and all claims, avoidance rights (including those under Chapter 5 of the Bankruptcy Code), complaints, duties, demands, contracts, agreements, promises, liens, indebtedness, attorneys' fees, suits, obligations, costs, causes of action, damages, losses, rights, and liability of any nature or character whatsoever whether in law or in equity, whether known, unknown, or suspected, existing or prospective which have accrued from the beginning of time to the date hereof; and

      b. Logitech's past and current affiliates, officers, directors, employees, shareholders, owners, partners, representatives, insurers, agents and attorneys, both individually and in their business capacities (collectively, the "<u>Logitech Releasees</u>") from any and all claims, avoidance rights (including those under Chapter 5 of the Bankruptcy Code), complaints, duties, demands, contracts, agreements, promises, liens, indebtedness, attorneys' fees, suits, obligations, costs, causes of action, damages, losses, rights, and liability of any nature or character whatsoever solely arising from, related to or in connection with the APA, the Escrow Agreement or any related transactions between Logitech and the Debtor, whether in law or in equity, whether known, unknown, or suspected, existing or prospective which have accrued from the beginning of time to the date hereof.

The foregoing release shall not limit nor be deemed to limit the rights of the Trustee or the Debtor's estate to enforce this Settlement Agreement in accordance with its terms

**EXECUTION VERSION**

6.  **Release by Logitech.**  Upon the Settlement Effective Date and subject to Logitech's receipt of the Logitech Escrow Funds:

   a. Logitech hereby conclusively, absolutely, unconditionally, and irrevocably release and forever discharges the Debtor's estate and the Trustee from any and all claims, avoidance rights (including those under Chapter 5 of the Bankruptcy Code), complaints, duties, demands, contracts, agreements, promises, liens, indebtedness, attorneys' fees, suits, obligations, costs, causes of action, damages, losses, rights, and liability of any nature or character whatsoever whether in law or in equity, whether known, unknown, or suspected, existing or prospective which have accrued from the beginning of time to the date hereof, and regardless of whether or not evidenced by a filed proof of claim in the Bankruptcy Case; and

   b. the Logitech Releasees hereby conclusively, absolutely, unconditionally, and irrevocably release and forever discharge the Debtor's estate and the Trustee from any and all claims, avoidance rights (including those under Chapter 5 of the Bankruptcy Code), duties, demands, suits, obligations, costs, causes of action, damages, losses, rights, and liability of any nature solely arising from, related to or in connection with the APA, the Escrow Agreement or any related transactions between Logitech and the Debtor, whether known, unknown, or suspected, and regardless of whether or not evidenced by a filed proof of claim in the Bankruptcy Case.

The foregoing release shall not limit nor be deemed to limit the rights of Logitech to enforce this Settlement Agreement in accordance with its terms.

7.  **Bankruptcy Court Approval.**  Promptly after this Settlement Agreement is executed by the Parties, the Trustee will file a motion with the Bankruptcy Court seeking approval of the Settlement Agreement, including authorization to take all actions reasonably necessary to effectuate the terms hereof. The Parties shall each use reasonable efforts to obtain approval of the Settlement Agreement by the Bankruptcy Court. Each of the Parties agrees to support the motion and not to object or support another party's objection thereto. In the event that the Bankruptcy Court does not approve this Settlement Agreement, the Settlement Agreement shall be null and void and of no force and effect, and the Parties shall be returned to the same positions they were in prior to execution of this Settlement Agreement, as if this Settlement Agreement had never been executed.

8.  **Entire Agreement.**  This Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreement and discussions. This Settlement Agreement may not be modified, amended or terminated except by an instrument in writing signed by an authorized representative of each of the respective Parties.

**EXECUTION VERSION**

9. Construction. No Party shall be deemed the drafter of this Settlement Agreement. The headings herein are solely for the convenience of the Parties and do not form a substantive part of this Agreement. If any term or other provision of this Settlement Agreement is finally held by a court having competent jurisdiction to be invalid, illegal or incapable of being enforced by any rule of law or public policy: (i) said term or other provision shall be enforced to the maximum extent allowed and/or reconstrued in order to effect the intent of the Parties as closely as possible; and (ii) all other conditions and provisions of this Agreement not otherwise affected shall nevertheless remain in full force and effect.

10. Representations by the Parties. The Parties acknowledge that they are entering into this Settlement Agreement knowingly, freely and voluntarily and that the consideration received by each of them is fair and adequate. The Parties represent and acknowledge that they have conferred with and are represented by, or have been given the opportunity to confer with or be represented by, independent legal counsel of their choice with respect to this Settlement Agreement and all matters covered by or related to its subject matter. The Parties declare that they fully understand all of the terms and provisions of this Settlement Agreement and regard the same to be fair and reasonable.

11. Successors and Assigns. All rights of each Party hereunder shall inure to the benefit of their respective successors, assigns, each and all of the Logitech Releasees, and all obligations of each Party hereunder shall bind the successors, assigns, heirs, administrators, executors and legal representatives and estate of each Party.

12. No Third Party Beneficiaries. Nothing in this Settlement Agreement is intended or shall be construed to give any person, other than the Parties hereto, and their successors and assigns, any legal or equitable right, remedy or claim under or in respect of this Settlement Agreement or any provision contained herein.

13. Authority of Signatories. The persons executing this Settlement Agreement on behalf of each Party represent and warrant that they have the authority to do so.

14. Governing Law. This Settlement Agreement shall be governed by and interpreted in accordance with the laws of the State of Delaware, without regard to the conflict of laws of the State of Delaware.

15. Non-Reliance and Construction. The Parties have decided to execute this Settlement Agreement based on information developed independently and not in reliance on representations of any other party. The Parties agree that each of them has had a full opportunity to participate in the drafting of this Settlement Agreement and, accordingly, any claimed ambiguity shall be construed neither for nor against any Party.

16. No Admission; Reservation of Rights. The Parties understand and agree that any claim, cause of action or defense that any Party may have against another is disputed, and that the Parties are entering into this Settlement Agreement for the purpose of settling such disputes by compromise in order to avoid further litigation. Neither the execution nor delivery of this

**EXECUTION VERSION**

Settlement Agreement shall constitute an admission of any wrongdoing or liability whatsoever on the part of any of the Parties.

17.    Further Assurances.  The Parties hereby agree promptly to execute and deliver any and all such further instruments and documents and to take all such further actions as may be reasonably required by the other Party to effectuate the terms and conditions of this Settlement Agreement.

18.    Costs and Expenses.  Each Party agrees to be responsible for and to bear its own costs, expenses and attorneys' fees incurred in connection with the negotiations related to and the preparation of this Settlement Agreement, and not to seek from each other reimbursement of any such costs, expenses and attorneys' fees.

19.    Jurisdiction.  The Bankruptcy Court shall have exclusive jurisdiction to adjudicate matters arising under or in connection with this Settlement Agreement.  Each of the Parties hereby irrevocably consents to the jurisdiction of the Bankruptcy Court with respect to any action to enforce the terms and provisions of this Settlement Agreement and expressly waives any right to commence any such action in any other forum.  EACH OF THE PARTIES HEREBY IRREVOCABLY WAIVES ITS RIGHTS TO A JURY TRIAL FOR ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS SETTLEMENT AGREEMENT.

20.    Counterparts.  This Settlement Agreement may be executed in one or more counterparts, including by facsimile or email attachment, each of which shall be deemed an original, but all of which together constitutes one and the same instrument.

IN WITNESS WHEREOF, the Parties have each approved and executed this Settlement Agreement as of the date(s) set forth below.

*[SIGNATURE PAGES FOLLOW]*

**EXECUTION VERSION**

AGREED TO AND APPROVED:

Dated: ~~August~~ Sept 18, 2018

**DAVID W. CARICKHOFF, SOLELY IN HIS CAPACITY CHAPTER 7 TRUSTEE OF THE ESTATE OF MAD CATZ, INC.**

By: _/s/ David W. Carickhoff_

Name: David W. Carickhoff

Title: Chapter 7 Trustee

Dated: August 20, 2018

**LOGITECH EUROPE S.A.**

By: _____

Name: François Stettler / Ulysse Rochat

Title: General Counsel EMEA / Senior Manager Legal Affairs

Dated: August 20, 2018

**LOGITECH INC.**

By: _____

Name: Bryan Ko

Title: General Counsel

Dated: August 24, 2018

**LOGITECH UK LIMITED**

By: _____

Name: Catherine Bedat Gervais / Neal Ruczkowski

Title: Director Human Resources / Head of Western Europe

Dated: August 20, 2018

LOGITECH TECHNOLOGY (SUZHOU) CO. LTD.

By: _[seal: 罗技科技(苏州)有限公司]_

Name:

Title:

Dated: September 19, 2018

**LOGITECH ASIA PACIFIC LIMITED**

By: _____

Name: Jean-Marc Fluckiger

Title: Director