## EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between David W. Carickhoff, solely as chapter 7 trustee (the "Trustee") for the estate of Mad Catz, Inc. (the "Debtor"), and not in any individual capacity, on the one hand, and McMillan LLP ("McMillan") on the other hand. (McMillan and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party").

## BACKGROUND

WHEREAS, on March 30, 2017 (the "Petition Date"), the Debtor commenced a case (the "Chapter 7 Case") by filing a voluntary petition for relief in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") (Case No. 17-10679); and

WHEREAS, the Debtor and McMillan had various business relationships and/or dealings prior to the Petition Date; and

WHEREAS, David W. Carickhoff was duly appointed as the Trustee in the Chapter 7 Case; and

WHEREAS, in September 2018, the Trustee sent a demand letter (the "Demand Letter") to McMillan asserting, *inter alia*, that the Trustee was entitled to avoid and recover, pursuant to Bankruptcy Code sections 547 and 550, alleged preferential transfers (the "Alleged Preferential Transfers") made by the Debtor to McMillan in the amount of $116,166.74 during the 90-day period prior to the Petition Date; and

WHEREAS, on March 26, 2019, the Trustee and McMillan executed a Stipulation and Tolling Agreement Extending Statutes of Limitations (the "Tolling Agreement"), whereby the parties agreed that all applicable statutes of limitation or repose applicable to causes of action under chapter 5 of the Bankruptcy Code would be tolled through and including June 30, 2019 (the "Tolling Period"), and that the Trustee covenanted not to sue McMillan for the period beginning March 26, 2019 through and including May 31, 2019; and

WHEREAS, rather than proceed with litigation concerning the Alleged Preferential Transfers, during the Tolling Period, the Parties engaged in good faith, arms' length negotiations to resolve the Demand Letter in its entirety.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1. **Recitals.** The recitals set forth above are incorporated herein by reference.

2. **Settlement Amount.** Within fifteen (15) days after execution of this Settlement Agreement by all Parties, McMillan shall pay to the Trustee the total sum of $20,000 US (Twenty Thousand United States Dollars) in full and complete settlement of the Alleged Preferential Transfers, including attorneys' fees and costs associated with the Trustee's demand (the "Settlement Amount"). The Settlement Amount shall be mailed or wired in accordance with

1

instructions provided by the Trustee. In the event the Settlement Agreement is not approved by the Bankruptcy Court upon motion of the Trustee as referenced in paragraph 11 herein, the Trustee will promptly return the Settlement Amount to McMillan, and in no event more than ten (10) business days after the Bankruptcy Court's entry of an order denying to approve this Agreement.

3. **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the date upon which all of the following have occurred: (i) entry of an order of the Bankruptcy Court approving this Settlement Agreement that is final, non-appealable and no longer subject to appeal; and (ii) the Trustee has received the Settlement Amount in good funds (the "Settlement Effective Date").

4. **Trustee's Release.** Effective on the Settlement Effective Date, the Trustee, solely in his capacity as Trustee, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally, and forever waived, released, acquitted and discharged McMillan from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, has had, may have or may claim to have against McMillan that relate in any way to the $116,166.74 in payments that the Trustee seeks to avoid as Alleged Preferential Transfers or to causes of action authorized by or under chapter 5 of the Bankruptcy Code.

5. **McMillan's Release.** Effective on the Settlement Effective Date, McMillan shall be deemed to have irrevocably and unconditionally, fully, finally, and forever waived, released, acquitted and discharged the Trustee and his professionals from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which McMillan has, has had, may have or may claim to have against the Trustee that relate in any way to the $116,166.74 in payments that the Trustee seeks to avoid as Alleged Preferential Transfers or to causes of action authorized by or under chapter 5 of the Bankruptcy Code.

6. **Section 502(h) Claim Waiver.** McMillan hereby waives the right to file or assert any claim under section 502(h) of the Bankruptcy Code.

7. **No Admissions.** This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the Demand Letter or the Alleged Preferential Transfers.

8. **Expenses.** The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the Demand Letter and this Settlement Agreement. In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs, and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

9. **Severability.** The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid, or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity, and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

10. **Miscellaneous.**

(a) Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b) Each of the parties hereto shall execute and deliver any and all additional papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c) No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations, or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d) This Settlement Agreement shall be governed by and construed in accordance with the law of the state of Delaware without regard to any choice of law provisions.

(e) This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f) The Bankruptcy Court shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer, or enforce the terms and provisions of, this Settlement Agreement.

(g) Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Alleged Preferential Transfers is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defenses as of the date this Settlement Agreement is executed as set forth below.

(h) Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

    (i) In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

    (j) The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

    (k) This Settlement Agreement shall not be modified, altered, amended, or vacated without the written consent of all parties hereto or order of the Bankruptcy Court.

    (l) This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

    (m) The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

    (n) The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

    11. **Bankruptcy Court Approval.** Following the Parties' execution of this Agreement, and in no event later than July 16, 2019, the Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall be null and void and of no force and effect, and the Parties shall be returned to the same positions they were in prior to execution of this Settlement Agreement, as if this Settlement Agreement had never been executed with the exception of the tolling of the statute of limitations under this Agreement, which tolling shall survive.

*[SIGNATURE PAGE FOLLOWS]*

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

DAVID CARICKHOFF, CHAPTER 7 TRUSTEE

By: *[signature]*  June 29, 2019
David Carickhoff, solely in his capacity as
Chapter 7 Trustee of Mad Catz, Inc.

MCMILLAN LLP

By: *[signature]*  June 29, 2019
Name: Adam Maerov
Title: Partner